Jacob Markowitz, J.
Plaintiff, presently being held at Matteawan State Hospital, brings this action against the District Attorney of New York County and one of his assistants for a declaratory judgment. The action is brought in plaintiff’s own behalf and as a class action under CPLB. 1005 on behalf of 1 ‘ all persons now confined pursuant to the authority of the Code of Criminal Procedure, Sec. 662-b, who wish to assert motions attacking their indictments ”, Defendants have moved to dismiss on dual grounds: (1) that plaintiff does not have legal capacity to sue and (2) that the complaint fails to state a cause of action. Plaintiff urges that since there are no material facts in dispute, which the court finds to be the case, the court, under CPLB 3211 (subd. [c]), should treat the motion as a motion for summary judgment. He requests that the court direct the entry of summary judgment in plaintiff’s favor under CPLB 3212 (subd. [b]). The court finds that the matter is one suitable for summary disposition in accordance with this decision.
Prior to January, 1967 plaintiff had been a mental patient at Central Islip State Hospital for 17 years. During December, 1966 plaintiff was on leave from the hospital on a so-called “home pass”. On December 22, 1966 one Edward Orman was shot and wounded in a New York City subway station. In January, 1967 plaintiff was arrested and charged with the crime and on February 2, 1967 he was indicted by the New York County Grand Jury and charged with assault in the first degree and related crimes. Subsequently, plaintiff made a motion for inspection of the grand jury minutes, which was denied by a Justice of this court (N. Y. L. J., March 20, 1967, p. 17, col. 1). Still later plaintiff was sent to Bellevue Hospital for an examination pursuant to section 662-b of the Code of Criminal Procedure. By order made by this court under date of July 6, 1967 plaintiff was found to be in “ such a state of *1058 idiocy, imbecility or insanity that he is now incapable of understanding the charge or proceedings against him, or of making his defense thereto ” and he was ordered committed to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate State institution. 'Shortly thereafter he was placed in Matteawan State Hospital, a hospital operated by the New York State Department of Correction, where he has now been confined for more than two and a half years.
Subsequently, Mr. Orman, the victim of the shooting, sued the State of New York in the Court of Claims, alleging the negligence of the Central Islip authorities in permitting a patient to leave the premises for a home visit and claiming that that negligence was the proximate cause of Mr. Orman’s injuries (see Orman v. State of New York, 59 Misc 2d 337). As appears from the decision of Judge Simon in that case, only one witness who had claimed to have seen the shooting was brought forward and he testified in the Court of Claims action that he was “ reasonably sure ” that Neely, the plaintiff here, was the assailant “but not positive of the identification” (p. 340). Against that background the Court of Claims found (p. 343): “For * * # damages to result from this claim the State must be found negligent and its negligence to have been the proximate cause of the attack of which claimant was the innocent and unprovoking victim. The evidence adduced does not support such findings since the proof does not warrant the court to hold that the patient on leave was the assailant. This determination would not affect the trial of the patient when and if he is found able to be tried nor would it affect the decision thereon.”
In July of 1967, the attorney who had theretofore represented plaintiff had been advised by plaintiff’s sister that his services were no longer required. The decision of the Court of Claims was filed on February 18, 1969. Prior thereto, on January 27, 1969, plaintiff’s parents and his sister visited the offices of present counsel for plaintiff and formally retained him 1 ‘ to obtain [plaintiff’s] release from Matteawan State Hospital.”
After the instant action was commenced and question was raised about the new attorney’s authority to represent the plaintiff, plaintiff himself signed a retainer agreement, dated January 7, 1970, retaining the new attorney to “ obtain my release from Matteawan State Hospital and dismiss the proceedings against me ”.
On August 20, 1969, present counsel for plaintiff had written to defendant District Attorney requesting that, in the light of the Court of Claims decision in Orman v. State of New York *1059 (59 Misc 2d 337, supra) the District Attorney either consent to the dismissal of the indictment against plaintiff so as to facilitate his transfer back to Central Islip State Hospital or, in the alternative, that the District Attorney consent to the making of a motion to dismiss the indictment. Defendant Assistant District Attorney promptly replied to the effect that his office was studying the file and the Court of Claims decision to determine “ whether or not we will consent to the making of a motion to dismiss the indictment herein ’ ’ and would contact counsel in the near future. Shortly thereafter he wrote plaintiff’s attorney a second letter advising that, after careful study and evaluation “this office sees no basis for dismissing the indictment against Mr. Neely ’ ’.
The second and definitive letter from the District Attorney’s office made no reference to the request of plaintiff’s attorney that the District Attorney consent to the making of a motion to dismiss the indictment, as distinguished from the request that the District Attorney consent to the dismissal of the indictment.
This action for a declaratory judgment followed. The demand is that the court enter judgment declaring subdivision 3 of section 662-b of the Code of Criminal Procedure to be unconstitutional or, in the alternative, construing that section to permit plaintiff and others similarly situated to move for a dismissal of the indictment without the consent of the District Attorney and without waiting for two years from the date of their commitment to a mental institution. Plaintiff asks for a further declaration that he and all others similarly situated are entitled to retained cousel and, if indigent, assigned counsel to assist them in making such motions.
Certain of the issues raised can be disposed of in brief fashion.
First: The court finds no basis for the maintenance of the action as a class action under CPLB 1005. The complaint contains no allegation as to any wrong perpetrated on any member of the alleged class other than the plaintiff. Moreover, even if such allegations had been included the class action would fall under the rule that such an action ‘1 may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved 1 may determine for himself the remedy which he will seek ’ and may be .subject to ‘ a defense not available against others ’ ”. (Gaynor v. Rockefeller, 15 N Y 2d 120, 129.)
Second: Since no proper class action is involved, there is no basis on which the court may or should reach the question whether others whose situation may be similar to that of the plaintiff are entitled to retain counsel and, if indigent, assigned *1060 counsel to assist them in making motions addressed to the dismissal of their respective indictments. So far as the plaintiff himself is concerned, he is already represented by counsel, who has been retained to obtain plaintiff’s release from Matteawan and to effect the dismissal of the indictment. Hence, there is no issue properly before the court with respet to any right of the plaintiff to be represented by assigned counsel.
The disposition of these issues brings us to the central question presented on this motion, i.e., whether on the complaint before the court and in light of the provisions of section 662-b of the Code of Criminal Procedure, plaintiff can or should be granted a declaratory judgment with respect to his right to move to dismiss the indictment pending against him.
There appears to be no question but that plaintiff is suffering from mental illness. Indeed, in framing his request to the District Attorney as noted above, plaintiff’s attorney sought, as an end result, the transfer of the plaintiff back to Central Islip State Hospital. There are vast differences between confinement in Matteawan, which is operated by the Department of Correction, and confinement in a civil hospital operated by the Department of Mental Hygiene. Matteawan is a maximum security institution, a term which in itself implies the imposition on its patients of various restrictions which are not applicable to civil patients. As to the differences in therapy available to patients at the two kinds of institutions, it is suitable to quote from a study made by a Special Committee of the Association of the Bar of the City of New York, Mental Illness, Due Process and the Criminal Defendant (1968), as follows (p. 62, footnote omitted): “ The committee’s study of annual reports of Matteawan State Hospital from its opening to 1966 demonstrates that the problems of operating a mental hospital in the Department of Correction have changed very little since the first patients were moved from Auburn to Beacon in 1892. Over the decades the problems have included constant overcrowding, vacancies, turnover, and unlicensed physicians on the medical staff; inadequate personnel recruitment devices; lack of aftercare and convalescent status facilities; lack of social workers and psychologists, and serious and repeated doubts as to the propriety of assigning the administration of a mental hospital to the correctional authorities.”
The court takes judicial notice of the fact that, in the wake of the United States Supreme Court’s decision in Baxstrom v. Herold (383 U. S. 107) there has been a significant decline in the patient population at Matteawan and a corresponding-improvement in the therapeutic opportunities available to the *1061 hospital’s remaining patients. The distinction between Matteawan and civil hospitals operated by the Department of Mental Hygiene nonetheless remains.
Section 662-b of the Code of Criminal Procedure permits confinement of defendants held thereunder in hospitals operated by the Department of Mental Hygiene, at the discretion of the Commissioner of Mental Hygiene. However, even as to defendants thus held in a civil hospital there are differences between the therapeutic opportunities available to such defendants and those available to civil patients. This was recognized by the Department of Mental Hygiene when, in 1958, the department supported an amendment to section 662-b of the Code of Criminal Procedure which permits dismissal of indictments under certain circumstances discussed below. At that time New York’s then Commissioner of Mental Hygiene stated in a memorandum in .support of the legislation (N. Y. State Legis., Annual, 1958, p. 468): “Under the present law these mentally deranged defendants must be held in our civil mental institutions in close confinement in a manner approximating a jail. The most effective treatment procedures must be denied to them because of the restrictive nature of their custody. This results in delay and in most cases obviates any possibility of recovery, amounting to virtual life imprisonment of many. In the interest of humanity, justice, and plain common sense economy, the rigid provisions of this law need modification with proper safeguards that are provided in this bill. The bill empowers the court having jurisdiction of any such case to dismiss the indictment upon consent of the district attorney. These are enabling and permissive amendments which vest in the prosecuting authorities and the courts the ultimate judgment as to the wisdom in the public interest of dismissal of an indictment in any case; a power which they do not have under present law. ’ ’
There are also wide differences in the legal rights afforded to civil patients as distinguished from patients held under section 662-b of the Code of Criminal Procedure. Pursuant to the revisions of article 5 of the Mental Hygiene Law which became effective in 1965, civil mental patients are provided access to the Mental Health Information Service, an arm of the court (Mental Hygiene Law, § 88), are provided with periodic judicial review of the propriety of their confinement (Mental Hygiene Law, §§ 72, 73) and are provided with the right to a jury trial review of judicial determinations respecting their confinement (Mental Hygiene Law, § 74). None of these rights are accorded by statute to the patient held under section 662-b of the Code of Criminal Procedure.
*1062 Suffice it to say that the differences between detention under section 662-b and detention as a civil patient are so many and so significant that it is unthinkable that a Matteawan patient would be denied the opportunity to persuade a court that he is improperly held at that institution.
The court finds, contrary to the contention of the District Attorney, that the plaintiff does have the legal capacity to sue and to retain counsel to represent him. It is well settled that an adjudication of mental illness is not an adjudication of “ incompetence ”. Absent a judicial declaration of incompetency, a person, although mentally ill, can sue or be sued in his own name. (CPLR. 321, subd. [a], 1201; Sengstack v. Sengstack, 4 N Y 2d 502; Finch v. Goldstein, 245 N. Y. 300; Anonymous v. Anonymous, 3 A D 2d 590.)
The difficulty in this case arises out of the language of subdivision 1 of section 662-b of the Code of Criminal Procedure, that, if the court is of the opinion that a defendant is incapable of understanding the charge against him or of making his defense, “ the trial or proceedings must be suspended, except as hereinafter provided”. (Emphasis supplied.) The only exceptions appearing on the face of section 662-b are in subdivision 3, which provides, in effect, that “upon [the] consent of the district attorney” a court may dismiss an indictment upon a showing that a defendant is a resident or citizen of another State or country or upon a showing that two years have elapsed from the date of the defendant’s commitment to the institution. Matter of Negro v. Dickens (22 A D 2d 406) was a case in which an indicted defendant detained at Matteawan for more than two years sought an order directing the dismissal of his indictment over the objection of the District Attorney and the Appellate Division held, in substance, that it was powerless to order the dismissal because the statute explicitly required the consent of the District Attorney.
In the instant case, too, the District Attorney has declined to consent to dismissal of the indictment but the question raised here is broader than that in Negro v. Dickens (supra). The question here is whether the consent of the District Attorney is required for the plaintiff to make a motion for dismissal of the indictment against him on grounds other than the fact of his confinement in Matteawan for more than two years. The answer to that question lies in a determination whether the provision of subdivision 1 of section 662-b of the Code of Criminal Procedure that “the trial or proceedings must be suspended ” is to be interpreted to mean that an indicted defendant found incapable to stand trial is disabled to make a *1063 motion addressed to Ms indictment, or any other pretrial motion, except with the consent of the District Attorney. In commenting on the absence in section 662-b of any explicit provision for the making of pretrial motions, the Bar Association’s report, cited above, stated (pp. 108-109, footnotes omitted): “ A blanket suspension of all further proceedings against the indicted defendant is more a burden than a blessing in this age of universal representation by counsel. There is no provision authorizing the court to entertain a well-founded motion by counsel challenging the sufficiency of the indictment. No authority is provided to move to suppress illegally seized evidence or to exclude statements and confessions. No method is provided, while memories are fresh and documentary evidence still available, to establish and preserve a defense, such as an alibi. The statute appears even to deny counsel for the hospitalized defendant the opportunity to show that the statute of limitations had lapsed prior to his indictment. In short, suspension of the proceedings is a positive handicap to the defense, and when it lasts for years or decades, it is for all practical purposes an insurmountable bar to effective assertion of the defendant’s constitutional rights.”
Cognizant of the Special Committee’s observations and recommendations in this area, the New York Temporary Commission on Revision of the Penal Law and Criminal Code has recommended, as part of its proposed revised New York Criminal Procedure Law, a specific provision permitting an incapacitated defendant in the custody of the Commissioner of Mental Hygiene to 1 ‘ make any motion authorized by this chapter which is susceptible of fair determination without his personal participation ”. (See Sen. No. 4624, Feb. 14,1969, § 730.60, subd. 5.) At this writing that proposed legislation is pending before our Legislature.
If section 662-b explicitly forbade the making of any motions by an incompetent defendant, except with the consent of the District Attorney, the court would be constrained to hold the section unconstitutional as constituting a denial of equal protection of the laws (Baxstrom v. Herold, 383 U. S. 107, supra; Matter of Buttonow, 23 N Y 2d 385; United States ex rel. Schuster v. Herold, 410 F. 2d 1071, cert. den. 396 U. S. 847). It would offend all accepted notions of justice and fair play to have a statutory scheme under which a competent defendant could obtain dismissal of his indictment upon a proper showing, while an incompetent defendant would be denied the right even to make such a showing unless the consent of the District Attorney were first obtained.
*1064 However, the issue of constitutionality can be avoided by reading and interpreting subdivision 1 of section 662-b to mean that the suspension of the trial or proceedings, mandated by that section, does not suspend any rights of the defendant to make motions addressed to the indictment but only suspends the right of the State further to prosecute the defendant. Such a reading is entirely consistent with the spirit of sections 658 to 662 of the Code of Criminal Procedure. The concept underlying those sections can be traced back to New York’s first statute on the subject enacted in 1828 which provided that ‘ ‘ no insane person can be tried, sentenced to any punishment, or punished for any crime or offence, while he continues in that state”. (2 Rev. Stat. 697 [1828].) That statute, in turn, arose out of ancient common-law principles to the same effect which are collected in Youtsey v. United States (97 F. 937). The fundamental notion is not that a defendant in a mentally ill condition should be deprived of legal rights available to other defendants. The notion rather is that the State should be disabled from prosecuting such a defendant while he remains in that condition.
Commendably, the District Attorney has taken the position in this action that a defendant committed to a State facility pursuant to section 662-b of the Code of Criminal Procedure has a right through counsel to question the legal sufficiency of an indictment filed against him. He has stated in a memorandum filed with the court that his office ‘1 finds it repugnant to due process of law and a right sense of justice to deny a person committed criminally to a state institution the right to attack the legal sufficiency of the indictment that serves as the predicate for his commitment.” The District Attorney argues, however, that, because he has taken this position, no justiciable controversy is presented to the court by this action (CPLR 3001) and that, therefore, the complaint ought to be dismissed for failure to state a cause of action. The court disagrees.
When, prior to the commencement of this action, the plaintiff’s attorney explicitly sought the consent of the District Attorney to the making of a motion to dismiss the indictment, as detailed above, he was unable to obtain from the District Attorney any statement other than the statement that “ this office sees no basis for dismissing the indictment”. Thus, at the time the action was brought a justiciable controversy existed. It was only after the action was brought that the District Attorney took the position that he would not oppose the making of a motion to dismiss on the ground that his consent had not been obtained. Thus, instead of demonstrating *1065 that no justiciable controversy existed when the action was brought, the position now taken by the District Attorney demonstrates that the plaintiff is entitled to declaratory relief.
There being no material issues of fact, .summary judgment may be granted to plaintiff.
Defendant’s motion is denied and summary judgment is granted plaintiff declaring that, notwithstanding the provisions of section 662-b of the Code of Criminal Procedure, plaintiff may make such motions addressed to the indictment as he may be advised without the consent of the District Attorney.