**Luis GOMEZ et al., Plaintiffs,**

v.

**Alan D. MILLER, Commissioner of Mental Hygiene of the State of New York, et al., Defendants.**

**No. 71 Civ. 2411.**

United States District Court,
S. D. New York.

Dec. 7, 1971.

Kristin Booth Glen, Bill of Rights Foundation, New York City, for plaintiffs; Nancy Stearns, National Lawyers Guild, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for defendants; Samuel A. Hirshowitz, Brenda Soloff, New York City, of counsel.

Bruce J. Ennis, New York City, for The American Civil Liberties Union and New York Civil Liberties Union, amici curiae.

LASKER, District Judge.

■ Plaintiffs are persons who have been indicted for felonies but not yet tried because they have been found to be incompetent to stand trial and confined[1] to Matteawan State Hospital under the provisions of § 662–b of the New York Code of Criminal Procedure (CCP). They bring this civil rights class action to declare the statute and its successor, art. 730 of the Criminal Procedure Law (CPL), McKinney's Consol.Laws, c. 11–A unconstitutional, and for injunctive relief. Jurisdiction is predicated on 28 U.S.C. §§ 1343(3), 2201 and 2202, the Fourteenth Amendment to, and Article 4, § 2, clause 1, of the United States Constitution. They move to amend the complaint and to reargue the denial of an earlier motion for the convening of a three-judge court. Defendants move to dismiss the complaint.

---

1. The proposed second amended complaint is dated October 5, 1971. DeMundo, Metesky and Ingram are alleged to have been in custody at Matteawan on that date. Gomez had theretofore been committed to Matteawan, but subsequently was certified as competent. As of October 5, 1971 he had not yet been tried, and under the terms of the statutes discussed below could, of course, be returned to Matteawan before trial. The reality of this possibility is supported by the fact that in the original proceeding as to Go-

mez' competence the State's psychiatrist testified that he was competent, and it was upon the testimony of his attorney that she could not communicate with him, that he was judicially determined to be not competent. Where a plaintiff not in custody may be remanded to custody under provisions which he attacks, he has standing to maintain the suit. Fhagen v. Miller, 306 F.Supp. 634 (S.D.N.Y.1969); Lollis v. N. Y. State Dept. of Social Services, 322 F.Supp. 473 (S.D.N.Y. 1970).

The burden of the proposed amended complaint is that the procedure (of both statutes) under which members of the plaintiffs' class are committed to Matteawan violates the equal protection and due process clauses of the Fourteenth Amendment because it does not require a finding of dangerousness as a condition to commitment. The plaintiffs do not contend in this action that they are competent, but rather that, even if they are not competent, a finding of dangerousness is a constitutional prerequisite to commitment to Matteawan.

As indicated in more detail below, persons falling within the plaintiff class here are the only persons who may be committed to Matteawan without a jury trial as to dangerousness. Incompetents other than members of the plaintiff class here can be committed without a finding of dangerousness to hospitals under the jurisdiction of the Department of Mental Hygiene, but they can be committed to Matteawan (operated by the Department of Correctional Services) only upon a determination that they are dangerous. It must be understood that there is a real difference between commitment to Matteawan and commitment to other hospitals for the mentally ill. As we pointed out in the earlier opinion in this case, "[t]he difference between the conditions obtaining in hospitals under the control of the Department of Correctional Services—Matteawan and Dannemora State Hospital—and those under the control of the Department of Mental Hygiene has been recognized by this court and the Court of Appeals of this Circuit. Judge Frankel remarked in United States ex rel. von Wolfersdorf v. Johnston, 317 F.Supp. 66, 67 (S.D.N.Y.1970), that Matteawan ' . . . is vastly different from—i. e., more miserable than—state hospitals for those

civilly committed.' The Court of Appeals expatiated on the subject [as to the 'adversities and rigors' of Matteawan's companion hospital Dannemora] in United States ex rel. Schuster v. Herold, 410 F. 2d 1071, 1078–1079 (2d Cir. 1969), cert. den. 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed. 2d 96 (1969)."

It is plaintiffs' contention that they may not be committed to the rigors of Matteawan unless it is properly determined that they are dangerous. They do not contest that they may be committed to a hospital under the jurisdiction of the Department of Mental Hygiene without such a determination if found to be incompetent, as all members of the plaintiff class in this proceeding have been. If granted the relief they seek here, plaintiffs would continue to be committed to Matteawan upon a jury determination of dangerousness but without such a determination would be held in a Department of Mental Hygiene hospital until found competent or otherwise released in accordance with law.

It is also claimed that the provisions of both statutes which (1) permit a nonresident of the state to move for dismissal of the underlying indictment at any time (but permit a resident to move for dismissal only after two years of confinement), and (2) require permission of the district attorney to move for dismissal of the underlying indictment, violate the same constitutional clauses.

In an earlier unreported opinion (which dealt solely with § 662–b, CCP) [2] we denied plaintiffs' motion for similar relief, holding, as to the sole issue which then appeared to be presented, that the failure to provide a jury trial as to competence to stand trial did not render the statute unconstitutional. On the basis of that decision, defendants have moved to dismiss the complaint. Plaintiffs have

---

2. 71 Civ. 2411, July 23, 1971. The American Civil Liberties Union has submitted, with the court's consent, a brief amicus curiae in support of the motion to reargue. It argues that a jury trial as to *competence* is constitutionally required for persons indicted but not yet tried, and cites various New York judicial decisions in support. To the extent that the argument depends on concepts of due process, the views expressed in the text below, questioning whether a jury trial of *dangerousness* is a requisite of due process, are relevant.

moved for reargument on the ground that the issue sought to be presented was not the right to a jury trial to determine competence to stand trial, but rather the right to a jury trial as to dangerousness as a condition to commitment to Matteawan. Furthermore, because the (new) CPL has come into effect since the filing of the complaint, plaintiffs have moved to amend the complaint to include a request for a declaration of unconstitutionality and for injunctive relief as to the CPL in the event that it is held applicable to them (a theory which they contest).

*The Motion to Amend:* The attack on the new statute is the sole material difference between the proposed amended complaint and the earlier pleading. Plaintiffs claim that there is at least serious doubt whether the provisions of the new law apply to them. They contend, however, that even if their cases are governed by the CPL, the improved procedure is still constitutionally defective as to them. Defendants construe the new statute to apply to plaintiffs and to have superseded the old law in governing the procedure of plaintiffs' continued commitment.

■ Federal Rule of Civil Procedure 15 states that leave to amend "shall be freely given when justice so requires." In the unusual posture of this case in which a new statute covering the subject matter of the action has come into effect during the course of litigation, which defendants themselves do not deny but, in fact, assert is applicable to the proceedings at hand, and the amendment will not prejudice the defendants, it is clear that justice requires allowing leave to amend. Accordingly, the motion to amend is granted.

■ *The Motion to Reargue:* The focus of the case as originally presented in plaintiffs' papers and on oral argument appeared to put as the issue the right to jury trial as to competence to stand trial. Nevertheless, an examination of the record does support plaintiffs' present contention that the issue of plaintiffs' right to a jury trial to determine dangerousness as a prerequisite to commitment was alleged and was not disposed of in the earlier opinion. It is therefore appropriate that it should be determined now. The constitutional claims are important and deserve consideration.

## I. *The Constitutional Questions*

### A. *The New York Statutes*

The old statutory scheme contained separate provisions for the commitment to Matteawan of the following classes of mentally ill persons: persons not charged with crime (§ 85 Mental Hygiene Law, McKinney's Consol.Laws, c. 27); persons charged with crime but not indicted (§ 872 CCP); convicted prisoners (§ 408 of the Correction Law, McKinney's Consol.Laws, c. 43); persons indicted but not tried (plaintiffs' class) (§ 662–b CCP).

A panoply of rights was established by the various laws, but for our purposes it is sufficient to state that as to all the classes except those of convicted persons and of persons indicted but not tried the statutes require a jury finding of dangerousness as a condition of commitment to Matteawan. In the case of a person indicted but not tried there is no such requirement. Even in the case of a convicted person the roster of rights is greater than that accorded a person indicted but not yet tried, e. g., the former is entitled to notice to a relative or next friend and periodic review of mental condition; the latter is not.

In our earlier opinion we reviewed the accidents of history which produced the anomaly that the rights of untried defendants were narrower even than those of convicted defendants. The explanation is that as a result of the holding in Schuster v. Herold, 410 F.2d 1071 (2d Cir. 1969), that convicted prisoners serving a sentence could not be committed to Matteawan without substantially the same protections accorded a nonprisoner, the New York legislature amended § 408 of the Correction Law to

broaden the rights of convicts, but it did not correspondingly expand the rights of persons indicted but not yet tried.

On September 1, 1971, the CPL became effective. Section 1.10 of that statute reads in relevant part:

"2. The provisions of this chapter apply to (a) all criminal actions and proceedings commenced prior to the effective date thereof but still pending on such date, . . ."

The Attorney General of New York has construed the new law to apply to the cases of persons in plaintiffs' class on the ground that they were "still pending" on September 1, 1971. While plaintiffs contend, with some justification, that the terms of the statute make it "unclear" whether it applies to them, nevertheless since it is arguable that it does, and since the Attorney General has represented that the state is acting accordingly, we must consider the provisions of the new law.

Like the CCP, the CPL makes separate provisions for the various classes of mentally ill persons described above. Incorporating by reference § 85 of the Mental Hygiene Law, various sections of the CPL require a jury trial as to dangerousness prior to commitment to Matteawan in the following cases:

1. Persons convicted of crime whose sentences are about to expire (CPL § 730.70(2)).

2. Persons acquitted by reason of mental disease or defect (CPL § 330.20 (6)).

3. Persons charged with misdemeanors but not yet tried (CPL §§ 730.50(1) and 730.60(3)).

Persons not charged with crime are entitled to a jury trial as to dangerousness under the provisions of § 85 of the Mental Hygiene Law itself.

While the new law (CPL § 730.60(1)) does require an *adjudication* of dangerousness before persons indicted for felony but not yet tried (plaintiff class) may be committed to Matteawan, it does not accord such persons—as distinct

from persons in all the classes specified above—the right to *jury determination* of dangerousness.

Furthermore, it appears that CPL §§ 730.50(2) and 730.60(4) require that persons already in custody of the Commissioner of Mental Hygiene but not yet adjudicated dangerous (plaintiff class) must affirmatively request a hearing as to dangerousness, while members of the other classes described are entitled to such hearings without request.

## B. *The Claims of Invalidity*

Although the statutory structure thus presented is complex, the issues raised by plaintiffs are concise and direct. Plaintiffs argue that the denial to them, under both the old and new laws, of the right to a jury finding as to dangerousness as a prerequisite to commitment to the specially harsh regimen of Matteawan violates their rights to equal protection and due process under the Fourteenth Amendment.

In response, defendants assert that a rational basis exists for applying procedures to plaintiffs' class different from those of other classes of mentally ill persons—so that there is no failure of equal protection—and that the due process clause does not require a jury trial as to dangerousness in any case. With particular reference to the question of equal protection, defendants point out that the very Court which in *Schuster*, supra, ruled that mentally ill prisoners were entitled to substantially the same rights as other mentally ill persons, stated (410 F.2d at 1084):

"... § 85 of the Mental Hygiene Law provides that before being committed to Matteawan, there must be a judicial determination that the individual to be committed is dangerous to himself and others. Such a procedure may not be appropriate for a prisoner because the additional security facilities of Matteawan or Dannemora might be thought necessary to confine convicts with sentences still to serve, who may be more prone to escape from a hospital than civilians."

It is rational to assume, defendants argue, that, like convicts serving a sentence, persons indicted for a felony may be "more prone to escape" than others, and that the procedures to be applied to them may therefore differ justifiably.

On this motion to convene a three-judge court the question before us is whether the issues raised by plaintiffs present substantial constitutional questions.

### 1) *Equal Protection*

■■ While doubts may exist as to whether the due process clause requires a jury trial as to dangerousness—a question which we discuss below—it is clear that the issue of equal protection here is substantial. Even if it be assumed that the Constitution does not require jury trials to determine dangerousness, New York, having granted the right in some cases, may not deny it in others except on the basis of a rational distinction. But the distinction proffered does not meet that test. The dictum from *Schuster* quoted above does, of course, suggest that cases of convicts serving sentences may be treated differently from those of "civilians," but defendants' reliance on the *Schuster* passage is misplaced here. In the first place, the plaintiffs in this action have not been tried or convicted, and indictment alone does not constitute a valid basis for the assumption of their dangerousness. As the Supreme Court said in Leary v. United States, 395 U.S. 6, at 36, 89 S.Ct. 1532, at 1548, 23 L.Ed. 2d 57 (1969): a presumption is " 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Surely it cannot be argued that dangerousness is more likely than not to flow from the fact of indictment alone—especially when it be considered that a substantial number of crimes do not involve or accuse the defendant of violence.[3] In the second place, both the old and new statutory schemes *do* afford *convicted* prisoners the right to a jury trial to determine dangerousness, and it can hardly be argued that under such circumstances (which did not exist at the time of the *Schuster* decision) the *Schuster* dictum justifies denial of the same rights to persons not tried or convicted. Indeed, as the Special Committee on the Study of Commitment Procedures and the Law Relating to Incompetents of the Association of the Bar of the City of New York has stated in its report, Mental Illness, Due Process, and the Criminal Defendant (1968), at 101:

> "Defendants accused but not yet convicted of crime should be treated as civil patients. Apart from the interference with personal liberty occasioned by a denial or requirement of bail and his obligation to appear for trial, a citizen loses none of his rights simply because he has been accused, even when the accusation is made by a busy grand jury. The defendant has forfeited none of the rights to vote, to pursue a profession, etc., that a convicted former prisoner may have forever surrendered, but he is treated far less generously when it comes to his need for hospitalization. In our view the state should not continue to view the mere pendency of a criminal charge or indictment as a rational basis for denying these patients the same protection against unnecessary confinement in a central maximum-security correctional institution which is given to every other patient not actually serving a penal sentence—a judicial determination of dangerous mental illness."

This report was cited in Schuster v. Herold, supra (410 F.2d at 1078), with approval.

The above analysis alone displays the lack of rational basis for the statutory

---

3. It may, of course, be argued that indicted persons are more prone to escape than non-indicted persons: but it is more than doubtful whether they are more prone to escape than convicted persons who, as indicated below, are granted the right to jury determination of dangerousness.

schemes, old or new. But the clincher is the fact that under the old law, by court interpretation,[4] and the new law by its own terms,[5] persons who have been acquitted on the ground of mental disease or defect are entitled to a jury trial as to dangerousness before they may be committed to Matteawan, whereas plaintiffs' class may be committed without such a trial.

The anomalies thus presented raise classic questions of equal protection and are substantial within the meaning of 28 U.S.C. § 2281ff.

### 2) Due Process

■ As indicated above, plaintiffs contend that the failure of the statutes to provide for jury trial as to dangerousness also violates the due process clause. While there may be doubt as to the validity of this contention, since we have determined that a three-judge court must be convened because of the substantial constitutional question presented by the equal protection issue, we leave for that court the determination of the due process question as well. It is appropriate to observe, however, that while a strong argument can be made that due process requires *determination* of dangerousness as a prerequisite to the commitment of persons in plaintiffs' class (and certainly to their prolonged commitment), it is questionable whether it requires a *jury trial* as to dangerousness. In Greenwood v. United States, 350 U.S. 356, 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), Justice Frankfurter, writing for a unanimous court, upheld the constitutionality of the federal procedure (18 U.S.C. § 4244ff) for commitment to mental hospitals of persons indicted but not yet tried. The federal scheme permits a person committed to be held indefinitely until his mental competency is restored provided the court finds that "if released he will probably endanger the safety of

the officers, the property, or other interests of the United States, . . . ." (18 U.S.C. § 4247). The statutes and the *Greenwood* decision have been recently construed by the Fourth Circuit in United States v. Curry, 410 F.2d 1372 (1969), to require that "the trial court should not commit a defendant into custody, pursuant to § 4246, unless and until the court shall also have determined that the defendant might, if released, be a public or private danger." [6] Absent such a construction of these sections, *Curry* indicates that their constitutional validity would be suspect. (410 F.2d at 1374). We may therefore assume that the Constitution requires a finding of dangerousness, at least for prolonged holding of a person found to be incompetent who has been indicted but not yet tried. The (old) CCP requires no such finding as to persons in plaintiffs' class and is constitutionally suspect on this score. However, art. 730 of the (new) CPL does require such a finding by "adjudication" and passes muster to that extent.

Because due process requires a finding of dangerousness for commitment (or at least prolonged holding) of persons in plaintiffs' class it does not follow that it also requires a jury determination of that condition. Indeed, the federal scheme, approved by both *Greenwood* and *Curry* as to its constitutionality, contains no such requirement. The determination of dangerousness is made by the court, and, while *Greenwood* and *Curry* do not appear to have involved a direct determination of the constitutionality of the determination of dangerousness by a judge as opposed to a jury, their holdings at least imply that due process does not require a jury determination.

■ Claiming that the commitment to Matteawan of a pretrial detainee

---

4. Section 454, CCP, as interpreted by the New York Court of Appeals in People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966).

5. CPL § 730.70(2).

6. The opinion notes that "The court may, of course, detain him for a reasonable time to observe and otherwise inquire into his propensities, and also to treat him for his illness in the hope of restoring competency."

found incompetent to stand trial is part of a "criminal prosecution," plaintiffs argue that they are entitled to a jury determination under the Sixth Amendment's provision for trial by jury in all "criminal prosecutions." But it is far from clear that the reference to "criminal prosecutions" in the Sixth Amendment includes dangerousness as a prerequisite to commitment in a mental hospital. Perhaps an argument more favorable to plaintiffs is that put forward in the opinion in Jackson v. Indiana, 255 N.E.2d 515, 519 (Ind.1970),[7] as to a statute similar to § 662–b of the CCP:

> "Clearly, the real basis for this commitment is the existence of the criminal charges against appellant. This is shown by the fact that if those charges were to be dismissed because another person confessed and plead guilty to those crimes, or the complainant admitted he had lied in making the charges, the commitment of appellant under Burns § 9–1706a, *supra*, would obviously be ended. Thus, the existence of *unproved criminal charges* operates to keep appellant confined in a state institution for life. This is a blatant violation of the due process clause of the 14th Amendment to the United States Constitution. For a case interpreting the federal statutes on this point see United States v. Curry (4 Cir. 1969), 410 F.2d 1372." (Emphasis in original).

As indicated above, however, we make no determination of the issue at this time, but leave its disposition for the three-judge court.

### 3) *Other Claims of Invalidity*

We also defer for determination by the three-judge court the question whether the Constitution is violated by the provisions in both the old and new statutes that (1) nonresident prisoners may move for dismissal of the indictment at any time, but resident prisoners may move only after two years of confinement; and (2) permission of the district attorney is required to move for dismissal.

Plaintiffs argue that the distinction between treatment of resident and non-resident prisoners violates both the equal protection clause of the Fourteenth Amendment and the privileges and immunities provision of Article 4. They contend that the justification for the distinction—that the state may save funds where a nonresident's case is transferred to his state of residence—is insufficient as a matter of law, and that the provision also violates the privileges and immunities clause of Article 4 of the Constitution as construed in the Slaughter-House Cases, 16 Wall 36, 83 U.S. 36, 21 L.Ed. 394 (1873), in which the Court wrote that the sole purpose of that clause

> "was to declare to the several states, that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction."

As to the requirement that the district attorney consent to a motion for dismissal of the indictment, plaintiffs argue that it violates the equal protection clause in discriminating unreasonably between mentally ill persons and other persons charged with crime. Indeed, one New York court has held the provision to violate equal protection standards. Neely v. Hogan, 62 Misc.2d 1056, 310 N.Y.S.2d 63 (Supreme Ct.N.Y.Co.1970).

These serious questions warrant consideration by the three-judge court.

### II. *Availability of Habeas Corpus as a Remedy*

There remains for consideration defendants' contention that the case should be dismissed since its true nature is that of habeas corpus, and plaintiffs have not exhausted state remedies as required by 28 U.S.C. § 2254(b). In our

---

7. Certiorari granted 401 U.S. 973, 91 S.Ct. 1203, 28 L.Ed.2d 322 (1971).

earlier opinion, based on the assumption that plaintiffs sought a jury trial as to competence rather than dangerousness, we held that the suit was "reasonably regarded as a habeas corpus proceeding." Our conclusion on the point, however, was qualified by the statement that "If these considerations were all that were before us, any doubt as to whether the case is properly classified as a habeas corpus proceeding should perhaps benefit the plaintiffs"; and we went on to say that the plaintiffs' motion, as we then understood it, failed on the merits.

The present posture of the case differs. Where, as here, what plaintiffs seek is limited to a determination of dangerousness prior to commitment to Matteawan, the grant of relief would not result in plaintiffs' release from custody. In order to secure their freedom the Matteawan plaintiffs must traverse two gates: both a determination of non-dangerousness (if it is found by the three-judge court that they have a right to such a determination) and a finding of competence. The instant proceeding does not relate to competence. Hence, even if a plaintiff here secures the relief sought, he will not, by virtue of such relief, be released from custody but, if found not dangerous, will merely be transferred to a Mental Hygiene Department hospital. In such circumstances, the case appears to fall within the test of Sostre v. McGinnis, 442 F.2d 178, 182 (2d Cir. 1971), that "because Sostre 'is not challenging the validity of his sentence with the ultimate object of obtaining release' from prison, Hancock v. Avery, 301 F.Supp. 786, 791 (M.D.Tenn. 1969), his Section 1983 petition is clearly not a mere sham procedure to avoid the exhaustion requirement of the federal habeas corpus statute, 28 U.S.C. 2254(b), (c)." (citations omitted).

Furthermore, as stated in Fhagen v. Miller, 306 F.Supp. 634, 638 (1969):

"It is true that habeas corpus is always available to test the lawfulness of detention. But this assumes a patient has knowledge or has been advised of his right to so proceed. In any event, not only is 'the presumption that the confined person knows the law . . . highly unrealistic,' but if the statute is constitutionally defective, it will not be saved by the Great Writ.

For the reasons set forth above plaintiffs' motions to amend, to reargue, and for the convening of a three-judge court are granted. Defendants' motion to dismiss is denied.

It is so ordered.