**UNITED STATES of America, Plaintiff,**

v.

**STATE OF TEXAS et al., Defendants.**

**Civ. A. No. 76–H–1681.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 3, 1976.

John P. MacCoon, Atty. in Charge, Dept. of Justice, Washington, D.C., James Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff.

David Kendall, First Asst. Atty. Gen. of Tex., Austin, Tex., for The State of Texas, Mark White and John Hill.

Will Sears, Michael T. Powell, Sears & Burns, Houston, Tex., for Waller County and Le Roy Symm, Tax Assessor-Collector of Waller County, Texas.

Before INGRAHAM, Circuit Judge, and NOEL and STERLING, District Judges.

## MEMORANDUM AND ORDER

NOEL, District Judge.

On October 14, 1976 the United States instituted this suit for declaratory and injunctive relief, alleging that discriminatory voter registration procedures and standards were applied by the Tax Assessor-Collector of Waller County, Texas to students attending Prairie View A & M College in violation of the Fourteenth, Fifteenth, and Twenty Sixth Amendments to the Constitution, as well as certain provisions of the Civil Rights Act of 1964 (42 U.S.C. § 1971(a)) and the Voting Rights Act of 1965 (42 U.S.C. § 1973). In particular, the United States complains of the practice of defendant Le Roy E. Symm in the performance of his statutory duties as the Tax Assessor-Collector and Registrar of Waller County, Texas of requiring students who apply to register for voting in Waller County to complete a questionnaire, which inquires as to the applicant's address, ownership of property, auto registration, phone listing, address on the college's records, post-graduate plans, and similar matters. It is alleged that non-students in Waller County are not required to complete such a questionnaire in order to register to vote in Waller County. It is further alleged that students attending colleges and universities in other counties of the State of Texas are not required to complete such a questionnaire in order to register to vote in their college communities.

A conference was conducted in the Chambers of Judge James Noel on Monday, October 18, 1976, to give the United States a prompt hearing on its Application for a Temporary Restraining Order. Although only one of the defendants had been served with summons at that time, all of the defendants appeared at the conference through counsel and consented to the personal jurisdiction of the Court. In considering the Application for a Temporary Restraining Order, the Court was concerned as to why this suit was filed only 19 days before the November 2 election day and in fact one day after absentee balloting had already begun. Counsel for the United States admitted that the Department of Justice with the assistance of the Federal Bureau of Investigation had been investigating the voter registration procedures in Waller County since January of 1976, yet no excuse was offered for the delay in filing the suit other than the fact that the Department of Justice had been "negotiating with state officials". In view of this unreasonable delay in filing suit as well as the fact that two prior attacks on this very same questionnaire in Waller County had been unsuccessful, *see Wilson v. Symm,* 341 F.Supp. 8 (S.D.Tex.1972) and *Ballas v. Symm,* 351 F.Supp. 876 (S.D.Tex.1972), *aff'd* 494 F.2d 1167 (5th Cir. 1974), Judge Noel denied the Application for a Temporary Restraining Order.

At the in-chambers conference the Court also considered the United States' Motion to Convene a District Court of Three Judges. The request for a three-judge court was predicated on the claim of the United States for injunctive relief to remedy alleged violations of the Twenty Sixth Amendment. 42 U.S.C. § 1973bb(a)(2) requires that such claims be heard and determined by a three-judge court. Defendants opposed the convening of a three-judge court on the grounds that the Twenty Sixth Amendment claim was not of sufficient substantiality to support three-judge court jurisdiction. *See California Water Service Co. v. City of Redding,* 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). Due to the

necessity of immediate action if a three-judge court were to be given an opportunity to review the case before the November 2 election date and in keeping with the admonition of the Chief Judge of this Circuit to leave the initial determination of substantiality to the three-judge court itself, *Jackson v. Choate,* 404 F.2d 910 (5th Cir. 1968), the Motion to Convene a Three-Judge Court was granted and the Chief Judge of the Fifth Circuit was immediately notified by telephone and thereafter in writing in accordance with 28 U.S.C. § 2284(b)(1).

On October 19, 1976 the Chief Judge designated as members of the Three-Judge Court to hear this case the judges whose signatures are hereto affixed. A pre-trial hearing was set for October 21, 1976 to hear oral arguments on the question of whether the Twenty Sixth Amendment claim was of sufficient substantiality to support the jurisdiction of the Three-Judge Court, to consider any pre-trial motions, and to determine whether and when an evidentiary hearing should be set on the United States' Motion for a Preliminary Injunction.

At the hearing on October 21, 1976 the Three-Judge Court joined in the earlier denial by the single Judge of the United States' Application for a Temporary Restraining Order. At the conclusion of oral arguments and the testimony of two witnesses, the Court announced that it was taking all pending motions under advisement and a ruling would be made on them as soon as possible. Pending, in addition to the United States' Motion for a Preliminary Injunction, are the Motion of defendants Symm and Waller County to Dissolve the Three-Judge Court, and motions by each of the defendants to dismiss. The Court will consider first the Motion to Dissolve the Three-Judge Court, then the motions to dismiss, and finally the Motion for a Preliminary Injunction.

1. Motion to Dissolve the Three-Judge Court

The Motion to Dissolve the Three-Judge Court is based on the contention that the Twenty Sixth Amendment claim asserted by the United States, upon which the convening of the Three-Judge Court was based, is insubstantial. Although on its face the requirement of a three-judge court in the applicable statutes appears to be absolute, the statutes have been interpreted to require three-judge courts if and only if the claims thereunder were not insubstantial. *See, e. g., Ex Parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); *California Water Service Co. v. Redding,* 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). In the context of one of the recently repealed general three-judge court statutes, the Supreme Court has defined insubstantiality as follows:

> Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. "Constitutional insubstantiality" for this purpose has been equated with such concepts as *"essentially fictitious," Bailey v. Patterson,* 369 U.S. 31, at 33, 82 S.Ct. 549, 7 L.Ed.2d 512; *"wholly insubstantial," id.; "obviously frivolous," Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910); and *"obviously without merit," Ex Parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933). The limiting words *"wholly"* and *"obviously"* have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that *claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous;* previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." (Emphasis added)

*Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973).

Defendants argue that *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), *Wilson v. Symm,* 341 F.Supp. 8 (S.D.Tex.1972), and *Ballas v. Symm,* 351 F.Supp. 876 (S.D.Tex.1972), *aff'd,* 494 F.2d 1167 (5th Cir. 1974), render the Twenty Sixth Amendment claim insubstantial. The Supreme Court in *Carrington* invalidated a provision of the Texas Constitution which absolutely prohibited military personnel from establishing voter residency in Texas. In so doing, the Supreme Court observed that only military personnel were subject to an irrebuttable presumption of nonresidency, whereas other groups, such as college students, which also presented "specialized problems in determining residence", were "given at least an opportunity to show the election officials that they are bona fide residents." 380 U.S. at 95, 85 S.Ct. at 779. In dealing with the special problems presented by servicemen and students, the Supreme Court emphasized ". . . that Texas is free to take reasonable and adequate steps . . . to see that all applicants for the vote actually fulfill the requirements of bona fide residence." 380 U.S. at 96, 85 S.Ct. at 780.

Defendants argue that the efforts of Symm to determine the true residence of voters through use of a questionnaire falls squarely within the permissible bounds set out in *Carrington.* The problem with this argument is that the Supreme Court in *Carrington* did not consider or decide what steps could be reasonably taken to determine the residency of special groups such as college students. The Supreme Court merely held invalid an irrebuttable presumption against such a group. Moreover, *Carrington* was decided long before the ratification of the Twenty Sixth Amendment. Thus, although the implications of *Carrington* may render the Twenty Sixth Amendment claim in this case of doubtful merit, the Court cannot say that *Carrington* is conclusive or that it renders the Twenty Sixth Amendment claim insubstantial. *Cf. Whatley v. Clark,* 482 F.2d 1230, 1233–34 (5th Cir. 1973), *cert. denied,* 415 U.S. 934, 94 S.Ct. 1449, 39 L.Ed.2d 492 (1974).

Defendants also rely on *Wilson v. Symm, supra,* and *Ballas v. Symm, supra,* as rendering the three-judge court claim insubstantial. The Waller County voter registration procedure, including the use of the very same questionnaire as is under attack here, was upheld in *Wilson* and *Ballas.* The plaintiffs in *Wilson* and *Ballas* were students at Prairie View A & M College and the defendant was Symm, one of the defendants in the present case. In *Wilson* the Court expressly rejected the argument that the Waller County procedure violated the Twenty Sixth Amendment. 341 F.Supp. at 17–18.

■ Although *Wilson* and *Ballas* may very well be dispositive of the Twenty Sixth Amendment claim in this case, the Court is of the opinion that the precedential effect of those decisions do not render the three-judge court claim insubstantial because lower federal court decisions may not be used for that purpose. *See,* Nielsen, "Three-Judge Courts", 66 F.R.D. 495, 501 (1975). The Supreme Court in considering the effect of prior decisions has stated that "[a] claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of *this* court . . . .'" (Emphasis added) *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973). Thus, it would appear that insubstantiality must rest upon the decisions of the Supreme Court.

■ However, defendants argue that *Ballas* and *Wilson* render the Twenty Sixth Amendment claim in this case insubstantial not merely because of their *stare decisis* effect, but also because those judgments operate as a *res judicata* bar against that claim. The difficulty with this argument is that the affirmative defense of *res judicata* does not appear on the face of the pleadings. The assertion of the defense of *res judicata* raises significant issues as to whether the United States, which was not a party to the prior decisions, is nevertheless bound by them and whether this case involves the same cause of action as was adjudicated in the prior decisions. Although defendants may ultimately be enti-

tled to partial summary judgment on the Twenty Sixth Amendment claim, the Court in determining substantiality may not go beyond the face of the pleadings, *Ex Parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933), nor may the Court avail itself of summary judgment procedure. *See Dale v. Hahn,* 440 F.2d 633, 639, n. 11 (2d Cir. 1971). Accordingly, the Court concludes that *Ballas* and *Wilson* do not render the three-judge court claim insubstantial and that the Motion to Dissolve the Three-Judge Court must be denied.

### 2. Motions to Dismiss

Defendants Le Roy E. Symm and Waller County have filed a Motion to Dismiss, which for the most part consists of allegations that the United States has not acted in good faith in filing this suit so near the pending general election, and that because of the unconscionable delay in filing suit any claim for injunctive relief with respect to the pending election is moot. Since these allegations do not constitute a complete defense to this suit, but merely involve the availability of preliminary injunctive relief, the allegations will be taken up in the part of the opinion dealing with the Motion of the United States for a Preliminary Injunction.

The Motion of defendants Symm and Waller County also attempts to raise the affirmative defense of *res judicata.* The parties are hereby given notice that the Motion to Dismiss, insofar as it attempts to raise the affirmative defense of *res judicata,* shall be treated pursuant to Fed.R.Civ.P. 12(b) as a motion for summary judgment so that matters outside the pleadings may be considered by the Court. *See* 2A Moore's Federal Practice § 12.09 at 2307 n. 26. The parties shall have until November 22, 1976 to present all materials made pertinent to this Motion by Fed.R.Civ.P. 56. Movants Symm and Waller County shall submit a brief on or before November 29, 1976 fully setting forth their position as to why the United States is bound by the judgments in *Wilson* and *Ballas* and which issues or claims are barred by the judgments in those cases. The United States shall file a reply brief on or before December 13, 1976 at which time the Court shall take the motion for summary judgment under advisement.

■ The State of Texas, the Texas Secretary of State, Mark White, and the Texas Attorney General, John Hill, also have filed a Motion to Dismiss, asserting that the Complaint fails to state a claim for relief against them. The Complaint alleges that:

[i]n administering and enforcing the voting laws of the State of Texas, the defendants Mark White and John Hill have permitted local election officials, including defendant Leroy Symm, to apply different and more stringent voter registration standards to the students attending Prairie View A&M College than are applied both to students attending the other institutions of higher learning in the State whose total student population is majority white, and to persons throughout Waller County and the State of Texas who are not Prairie View students.

The Texas Secretary of State is the chief election officer in Texas and it is his duty " . . . to obtain and maintain uniformity in the application, operation and interpretation of the election laws" through the issuance of directives to appropriate local officials. Tex.Election Code, art. 1.03. Enforcement of the directives of the Secretary of State is by way of injunction obtained by the Attorney General. Tex.Election Code, art. 5.02(b). In light of these statutory provisions it is the opinion of the Court that the allegations of the Complaint state a claim for relief against Secretary of State Mark White and Attorney General John Hill.

The Court is also of the opinion that the State of Texas was properly joined as a party defendant. This action was instituted by the United States under, *inter alia,* 42 U.S.C. § 1971(c), alleging that the Tax Assessor-Collector of Waller County, Texas had committed acts constituting a deprivation of a right secured by 42 U.S.C. § 1971(a). 42 U.S.C. § 1971(c) provides in pertinent part that:

[w]henever, in a proceeding instituted under this subsection any official of a State or subdivision thereof is alleged to have committed any act or practice constituting a deprivation of any right or privilege secured by subsection (a) of this section, the act or practice shall also be deemed that of the State and the State may be joined as a party defendant . . . .

Accordingly, it is clear that the Complaint states a claim for relief against the State of Texas, and the Motion of the State of Texas, Secretary of State Mark White, and Attorney General John Hill to Dismiss must be denied.

### 3. Motion for a Preliminary Injunction

The United States has filed a Motion for a Preliminary Injunction, seeking to obtain temporary injunctive relief to provide for the registration of Prairie View A & M students prior to the November 2, 1976 election day. An in-court hearing has been requested to present oral testimony.

■ Before reaching the question of whether preliminary injunctive relief *should* be granted under traditional equity standards, the Court must first consider whether preliminary injunctive relief *can* be granted at this late date. In other words, is the Motion for a Preliminary Injunction moot? The Court finds, for the reasons which follow, that the undisputed facts of this case establish as a matter of law that the relief sought in the Motion for a Preliminary Injunction cannot now be granted and that the Motion is therefore moot. Accordingly, the Motion for a Preliminary Injunction will be denied without the necessity of an evidentiary hearing. *See Schlosser v. Commonwealth Edison Co.*, 250 F.2d 478 (7th Cir. 1958); *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 198 (9th Cir. 1953); 7 Moore's Federal Practice ¶ 65.04[3].

The affidavits attached to the United States' Complaint as well as the admission of counsel in open court establish that the Civil Rights Division of the Department of Justice with the assistance of the Federal Bureau of Investigation began investigating the voter registration procedures in Waller County at least as early as January of 1976. In March of 1976 a registration drive was initiated at Prairie View A & M to register students to vote in time for the May 1 primary elections. The students were assisted in their efforts by Secretary of State Mark White and his staff.[1]

The primary and run-off elections came and went without the filing of any suit contesting Waller County voter registration procedures. Finally, on October 14, 1976, nine months after the Department of Justice's investigation had been initiated and seven months after the voter registration drive, the present suit was filed on behalf of the United States by the Civil Rights Division of the Department of Justice.

If defendants had been given 20 days to file an answer or motion as provided for in Rule 12(a), Fed.R.Civ.P., issue would not have been joined in this suit until after election day, since the suit was filed only 19 days before November 2. Furthermore, even a motion for temporary relief, such as a preliminary injunction may be heard only upon adequate notice to the adverse parties. Rule 6(d), Fed.R.Civ.P., which requires that a motion be served not later than 5 days before the hearing of the motion, has been held to be applicable to applications for preliminary injunctions. *See Marshall Durbin Farms, Inc. v. National Farmers Org., Inc.*, 446 F.2d 353 (5th Cir. 1971); *Franz v. Franz*, 15 F.2d 797, 799 (8th Cir. 1926). In addition, 28 U.S.C. § 2284, which sets forth the procedures governing three-judge court cases, requires that at least 5 days notice of the hearing of the suit be given to the governor and attorney general of the state, if the suit is against a state, as is the case here. 28 U.S.C. § 2284(b)(2). Accordingly, taking October 18, the date of the first in-chambers conference, as the date defendants first received notice of the filing of this suit and the pendency of a motion for a

---

1. See State of Texas' Exhibit # 1.

preliminary injunction,[2] the Court could not have heard the Motion for a Preliminary Injunction and granted the relief sought by the United States earlier than October 26, 1976,[3] which was exactly one week prior to election day.[4]

Although this suit seeks to have a relatively large class of individuals registered for purposes of voting in the November 2 election, it was not even filed until 10 days after the registration of voters for that election was closed. The Texas Election Code cuts off registration for an upcoming election thirty days before the actual date of the election. Tex. Election Code art. 5.13a (subdivision 4). Congress has recognized the need of the states to close registration thirty days before an election by permitting such a procedure in the Voting Rights Act of 1965. 42 U.S.C. § 1973aa–1(d). *See Dunn v. Blumstein*, 405 U.S. 330, 348 n. 19, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Once registration is closed for a particular election, the county clerk must order the printing of a sufficient number of ballots for the registered voters of the county. In this case, 7,490 ballots have been printed [5] for the 6,919 registered voters of Waller County,[6] leaving a surplus of only 571 ballots. In addition, the county registrar must prepare for each election precinct in the county an updated, alphabetical list of registered voters. Tex. Election Code art. 5.19a(1). These duties by local election officials must be completed before

absentee balloting commences, which is twenty days before election day.

In this case, absentee balloting commenced on October 13, 1976, one day before this suit was filed. Under Texas law, an election is considered to be in progress once absentee balloting commences. *See Skelton v. Yates*, 131 Tex. 509, 119 S.W.2d 91 (1938). Thus, the 1976 general election was already in progress when this suit was filed.

In considering whether the above facts render the Motion for a Preliminary Injunction moot, the Court first turns to decisions of the Texas Supreme Court that have dealt with the issue of mootness in the context of a pending election. In *Sterling v. Ferguson*, 122 Tex. 122, 53 S.W.2d 753 (1932), a suit was brought to enjoin the certification by the Texas Secretary of State of the winner of the Democratic gubernatorial primary because 50,000 illegal votes had allegedly been cast in the primary election. The suit was filed on September 28, only 40 days before the general election of November 8. The state district court dismissed the case on October 5 for lack of jurisdiction. The Texas Supreme Court affirmed, holding that the district court had jurisdiction of the election contest but that the suit had become moot by the date the district court dismissed it. The Court pointed out that the certificate of the Secretary of State containing the names of state candidates must reach the county clerks by October first in order to give those officers

---

**2.** Only one of the defendants, Secretary of State Mark White, has been served with summons in this case. The other defendants waived service of summons at the in-chambers conference on October 18, 1976.

**3.** In computing the five-day time period, Saturday, Sunday, and Monday (Veterans Day), October 23–25, were excluded in accordance with Rule 6(a), Fed.R.Civ.P.

**4.** Moreover, two of the members of this Three-Judge Court are also members of a three-judge court considering another case, which had been set for trial on October 26, 1976 with the trial estimated to last one week. Both three-judge court cases are entitled to statutory priority on the Court's docket. 28 U.S.C. § 2284(b)(2). However, the case set for trial on October 26 has been pending for six months, unlike the

case *sub judice*. In addition, one of the members of this Court had a criminal case set for trial on October 28, 1976. The time limit for the trial of this case under this District's Speedy Trial Plan adopted in conformity with the provisions of the Speedy Trial Act (18 U.S.C. § 3161, *et seq.*) will expire on October 28, 1976. Particularly, in view of the lack of diligence on the part of counsel in filing this suit, the Court is of the opinion that this case is not entitled to priority over the above cases. Thus, even if the Motion for a Preliminary Injunction had necessitated an evidentiary hearing, it is unlikely that the Court could have held the hearing prior to election day.

**5.** Waller County's Exhibit # 3.

**6.** Waller County's Exhibit # 2.

time to perform their statutory election duties, such as the posting of the names to be printed on the ballot ten days before the ballots are printed and the printing of the ballots. The Court then applied the rule that a case is moot ". . . when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law." 53 S.W.2d at 761. The Court in *Sterling* interpreted this rule to mean that an election contest is moot:

> when the time comes that a final judgment adjudging the validity or invalidity of the election certificate cannot be heard in time for the certificate of the secretary of state to reach the county clerks of the various counties of the state in time for at least substantial performance of the duties prescribed by law for the protection of valuable rights granted nominees and voters.

53 S.W.2d 760. Hence, the Texas Supreme Court ruled that the *Sterling* case was moot. *See also, Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632 (1946); *Thomason v. Seale*, 122 Tex. 160, 53 S.W.2d 764 (1932).

The federal courts have likewise shown a great reluctance to grant any relief that might disrupt the orderly conduct of an impending election. In *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) the Supreme Court affirmed the holding of a three-judge district court that Ohio election laws, which precluded candidates of the American Independent Party and Socialist Labor Party from being placed on the ballots, were unconstitutional. Despite holding in favor of the plaintiffs, the district court had granted relief only to the extent of allowing write-in ballots. The Independent Party immediately sought and obtained from Justice Stewart, as Circuit Justice, an injunction ordering the party's candidates to be placed on the ballot pending appeal. *Williams v. Rhodes*, 89 S.Ct. 1, 21 L.Ed.2d 69 (1968). Several days later a like motion was filed before Justice Stewart by

the Socialist Labor Party, which was denied because of the party's failure to move quickly to obtain relief. *Socialist Labor Party v. Rhodes*, 89 S.Ct. 3, 21 L.Ed.2d 72 (1968). The Supreme Court, after deciding the appeal, adopted the action of Justice Stewart. With respect to the Socialist Labor Party's request to be put on the Ohio ballot, the Supreme Court stated that:

> at this late date it would be extremely difficult, if not impossible, for Ohio to provide still another set of ballots. Moreover, the confusion that would attend such a last-minute change poses a risk of interference with the rights of other Ohio citizens, for example, absentee voters.

393 U.S. at 35, 89 S.Ct. at 12. Chief Justice Warren dissented, arguing that because of the delay in instituting suit [7] neither of the parties should have had their candidates placed on the ballot. 393 U.S. at 64, 89 S.Ct. 5. *See also, Cunningham v. English*, 78 S.Ct. 3, 1 L.Ed.2d 13 (1957) (opinion by C. J. Warren as Circuit Justice); *Mississippi Freedom Democratic Party v. Democratic Party*, 362 F.2d 60 (5th Cir. 1966); *Garza v. Smith*, 320 F.Supp. 131, 139 (W.D.Tex.1970), *vacated on other grounds*, 401 U.S. 1006, 91 S.Ct. 1257, 28 L.Ed.2d 542 (1971).

Although this case does not involve the placing of an additional or different candidate on the ballot, the extreme tardiness of the United States in filing this suit makes it impossible to grant the relief sought without disregarding Texas registration procedures designed to protect the purity of the ballot. The relief sought is that Prairie View A & M students be allowed to apply for registration to vote in the 1976 general election without being required to fill out a questionnaire. Since this suit was not filed until after registration for the 1976 general election had been closed under state law, that provision of state law would have to be disregarded.[8] In addition, the procedure in the Texas Election Code for challenging an applicant's voter qualifications would have to be abandoned because there would be no

---

7. The suit was filed in July of 1968. 393 U.S. at 64, 89 S.Ct. 5.

8. *See* Tex. Election Code art. 5.19a(1). *See also* Tex. Election Code art. 5.13a(4).

time to hear such challenges.[9] The procedures and deadlines for preparing a certified alphabetical list of registered voters for each election precinct in the county by the county registrar would have to be substantially modified.[10] The registrar would have to rush out a last-minute updated list with the attendant opportunity for error. Finally, a substantial number of additional ballots would have to be printed. Considering the fact that the United States seeks to have registered approximately 2,500–3,000 persons in a county that presently has only 6,919 registered voters, not only would Texas registration procedures be frustrated, but it might very well be physically impossible to register so many individuals in the short time remaining before election day and then make adequate preparations for their voting. Accordingly, it is the opinion of the Court that the Motion for a Preliminary Injunction is moot.

*Ballas v. Symm*, 351 F.Supp. 876 (S.D. Tex.1972), aff'd, 494 F.2d 1167 (5th Cir. 1974), presented virtually the same factual situation as here. The *Ballas* suit was filed 26 days before election day and six days before absentee balloting commenced, but five days after registration had closed. 351 F.Supp. at 881–82. In *Ballas*, which was brought by a private litigant as a class action, preliminary injunctive relief was requested for the class. The request was denied as moot because, as in the case *sub judice*, the requested relief could not be granted to the entire class at such a late date. 351 F.Supp. at 880–882.

In light of the holding in *Ballas*, the United States was fully warned as to the probable consequences of waiting so long to file this suit. The only excuse offered by

counsel is that the Department of Justice was negotiating with state officials in the hope that state and local officials would correct any deprivation of voting rights. Giving state officials the first opportunity to remedy the alleged violations may have been a valid reason for waiting until after the primary elections to take action. But once the primary elections had been conducted and the Department of Justice was still dissatisfied with the situation, suit should immediately have been filed, if the United States expected to obtain any relief before the general election in November. Apart from the issue of mootness, this unreasonable delay in filing suit may be a sufficient ground by itself to deny preliminary injunctive relief under the doctrine of laches. The Court, however, need not decide that question since the Motion for a Preliminary Injunction is clearly moot.

The United States asks the Court to overlook its lack of diligence in filing suit, disregard Texas registration procedures, and in effect set itself up as the registrar of Waller County for purposes of registering students to vote in an election already in progress. The proposed justification for this extraordinary relief is that otherwise a large number of students will be denied their fundamental right to vote in the November 2 election. However, Secretary of State Mark White testified at the pre-trial hearing that his study of the Texas voter registration records indicated that approximately half of the resident students at Prairie View A & M were already registered to vote in Texas. The depositions of the 16 key student witnesses for the United States indicates that at least half of them are registered to vote in Texas.[11] These

---

**9.** *See* Tex. Election Code art. 5.17a, which provides in subdivision (1) that:

> [a]ny person applying for registration may be challenged by the registrar or deputy taking his application or by any registered voter of the county. If after hearing and considering the challenge the officer taking the application is satisfied as to the applicant's entitlement to registration, he shall register the applicant, but if not so satisfied, he shall refuse to register the applicant.   .   .   . When the registrar refuses to register an ap-

plicant, the applicant may appeal from the decision of the registrar to a district court of the county within thirty days after the registrar's decision, and the decision of the district court shall be final.

**10.** *See* Tex. Election Code art. 5.19a.

**11.** Eight of the students indicated that they were registered to vote in counties in Texas other than Waller County. Two had applied for registration to vote elsewhere, but had not yet heard whether their applications had been

926

percentages compare favorably with the percentage of all citizens of voting age in Texas who are registered to vote, which according to Secretary of State Mark White is about 50%. Thus, what is at stake is not the right to vote *per se*, but the right to vote in a particular county without first abiding by the registration procedures of that county, which have been twice judicially approved.

The United States seeks to have this federal court precipitously and belatedly intervene in the affairs of the State of Texas with respect to a twice-litigated voter registration procedure without adequate notice to defendants, without adequate time for preparation and briefing by counsel, and without adequate time for consideration of the issues by the Court. The Court declines the invitation. This suit was simply filed too late for any immediate relief to be granted and, therefore, the Motion for a Preliminary Injunction will be denied.[12]

For the foregoing reasons, it is ORDERED that the Motion of defendants Symm and Waller County to Dissolve Three-Judge Court be, and the same hereby is, DENIED, and it is further

ORDERED that the Motion of defendants Symm and Waller County to Dismiss, insofar as it raises the defense of *res judicata*, shall be treated as a motion for summary judgment and determined in accordance with the procedures set forth in this Memorandum and Order and that the Motion to Dismiss in all other respects be, and the same hereby is DENIED, and it is further

ORDERED that the Motion of defendants Mark White, John Hill, and the State of Texas be, and the same hereby is, DENIED, and it is further

ORDERED that the Motion of the United States for a Preliminary Injunction be, and the same hereby is, DENIED.[13]

accepted. Four indicated that they were not registered to vote anywhere. The remaining two did not indicate whether they were registered to vote.

**12.** Since no issue of fact is involved in this denial of a preliminary injunction, it would appear that findings of fact and conclusions of law are unnecessary. *Douds v. Local 1250*, 170 F.2d 695 (2d Cir. 1948). To the extent that the same are required, however, this Memorandum and Order shall constitute the Court's findings of fact and conclusions of law.

**13.** By Order entered on October 29, 1976 the Court announced its rulings on the pending motions and stated that a memorandum would follow setting forth the Court's reasons. This Memorandum and Order is entered to accomplish that purpose.