In the Matter of the Estate of CATHERINE M. GOMEZ, Deceased.

Surrogate's Court, Kings County, September 22, 1936.

*Snedeker & Snedeker,* for Joseph D. Gomez, petitioner-account-ant, and Lambert R. Oeder and Lillian M. Gomez, as adminis-trators c. t. a., etc., of Joseph D. Gomez, deceased.

*Morrison & Lynn,* for the objectants-respondents Louise A. Jacod, Eleanor Jacod, Aimee Jacod, Frank Jacod, Marguerite Durie, Louise R. Jacod, and Frank Jacod as successor trustee.

WINGATE, S. The chief question for present determination is as to whether the conveyance by the committee of an incompetent during her lifetime of specifically devised realty effected an extin-guishment of such devise.

The pertinent facts have been stipulated or are uncontroverted. The will in question was duly executed on August 14, 1903. By its twelfth item the particular realty in question, which was located in the State of New Jersey, was devised to the children of testatrix's daughter, Louise A. Jacod, subject to a life estate in the daughter. The executors were authorized to sell the property during the life of the daughter, but only upon her request and consent, and in the event of sale, the proceeds were to be held in trust with the income pay-able to her for life, with the remainder to her children on her death.

The testatrix was adjudicated an incompetent on July 13, 1909, and a son appointed as committee for her by the County Court of Kings county. At this time the value of her estate in the hands of her committee amounted to $51,742.21.

In or about the year 1913 the incompetent was removed to the State of New Jersey by her committee, and there resided up to the time of her death.

On September 6, 1913, the same son was appointed guardian for the incompetent by the Bergen County, N. J., Orphan's Court, and thereafter, pursuant to an order of the New Jersey Court of Chancery, and in complete ignorance of the contents of the will, the specifically devised realty was sold for the sum of $4,121.90.

In 1916 the New Jersey guardian was judicially discharged and was directed to pay all sums in his hands to himself as New York committee.

The funds received on the sale of the real estate were commingled with all other funds of the committee in his bank account, which at one time was substantially exhausted by payments for her support and maintenance.

Aside from the bank account in which the realty proceeds were deposited, the committee at all times up to the date of death of the incompetent had in his hands for her account personal property in the form of stocks, bonds and other cash exceeding in value the proceeds of the realty and sufficient for her support and maintenance.

By orders of the Supreme Court of Kings county the committee was at various times authorized to expend not to exceed various stated annual sums for the maintenance of the incompetent but none ever expressly authorized the use of the realty proceeds.

At the time of her death the assets of the incompetent aggregated $28,230.36, and her net estate for distribution amounts to $25,633.24.

The chief reliance of those in opposition to the specific devisees seems to be predicated on the determination of the Court of Appeals in *Matter of Ireland* (257 N. Y. 155), but the court is inclined to agree with those contesting the result of destruction of the devise, that the differences in the facts of the two cases are so substantial as to destroy its authority as a pertinent controlling precedent.

Whereas the court is in substantial concurrence with the chain of argument of counsel for the specific devisees as far as it goes, it deems one link in this chain missing, which, in its opinion, is essential to the result he desires to attain. Following his argument step by step, it may be admitted, *arguendo*, at least, that the laws of New Jersey are controlling in respect to questions of title and devolution of real estate there located; that the sale of the New Jersey property in this estate did not result in a conversion of the land into personalty, and that the proceeds of sale when they came into the hands of the New York committee were still realty

subject to devolution on decease of the real owner in accordance with the laws of New Jersey in like manner as if they were still the realty from which they were derived. It may further be admitted, still *arguendo*, that the laws of New Jersey and New York both forbid the use of an incompetent's realty for his support and maintenance until the exhaustion of his personalty.

Even though all this be granted, the fact remains on the demonstration of the stipulation, that the proceeds of the realty were actually used and completely consumed during the life of the incompetent and that no part thereof ever came into the hands of her executor. The realty and everything standing in its place had ceased to exist in like degree as if it had been a shore front property which was completely eroded by the fury of a hurricane. Under circumstances such as have been supposed, the specific devisee would scarcely have the temerity to assert that the value of the destroyed gift should be made good to her by the donees of other parts of the estate.

If it be argued that the cases are not wholly parallel by reason of the injection of the element of alleged improper action on the part of the committee in the use of the proceeds, the case may be supposed of the specific bequest of a valuable diamond which was lost prior to the death through the negligent act of the committee. This, indeed, might conceivably give rise to an action against him on the part of the person injured by his improper act or neglect, but it would form no basis for the award to the specific legatee of a sum which, under the will, had been validily given to others.

The present is not a case in which the principle of equitable tracing of trust funds can be invoked. Had the proceeds of sale of the realty been deposited with other moneys of the committee in an account which had continuously shown a credit, it might be possible by application of the principle that the committee would be presumed to have expended only moneys legally permissible for use (Cf. *Matter of Holmes*, 37 App. Div. 15, 20; affd., 159 N. Y. 532) to award the devisee the minimum balance shown to have been in the account at any time. Such, however, are not the stipulated facts, which demonstrate that the funds in the account were " substantially exhausted." Since the burden is on the respondents, who are seeking the award, to trace the proceeds of the realty into the hands of the present accountant, who is a legally diverse person from the committee for the incompetent (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Collins* v. *Hydorn*, 135 id. 320, 324, 325; *Leonard* v. *Pierce*, 182 id. 431, 432; *Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 App. Div. 294, 296, 297; *Opdyke* v. *Marble*,

44 Barb. 64, 68; *Matter of Ebbets*, 149 Misc. 260, 267), this stipulation of fact furnishes no basis for any affirmative relief.

The will, in effect, makes two varieties of gifts. All with the exception of the described realty is given to the particular legatees specified. This realty is given to the respondent. The realty is not in the estate, and there is no other existing asset to take its place, and this deficiency cannot be supplied by taking something which is given others and turning it over to the respondent. Whether or not she now possesses a remedy against any person in a tribunal of general jurisdiction is a question which is neither propounded nor properly answerable in this court. All that can be said is that no property ever came into the hands of the present accountant which may be utilized to recoup her loss or fulfill her disappointed hopes.

Two minor questions are raised by the successor trustee. The first concerns the right to income from the date of death on the trust erected by the eleventh item of the will. The *cestui* is entitled to income at the rate earned by the estate as a whole (*Matter of Meyer*, 140 Misc. 1, 7; *Matter of Taft*, 143 id. 387, 391; 144 id. 896, 899; *Matter of Jacobs*, 154 id. 362, 363) from the date of death of the testatrix. (*Matter of Shevlin*, 143 Misc. 213, 215; affd., 242 App. Div. 636; *Matter of Wolfman*, 137 Misc. 325, 327; *Matter of Taft*, 143 id. 387, 391; *Matter of Jacobs*, 154 id. 362, 363.)

Respecting the discretionery power of invasion, the authority of the successor fiduciary must be deemed coextensive with that of the trustee named in the will. (*Matter of White*, 135 Misc. 377, 384; *Matter of Storts*, 142 id. 54, 55; *Matter of Kronson*, 140 id. 102, 103.)

Enter decree on notice in conformity herewith.