William J. Regan, S.
The court has been requested in this proceeding to determine the applicability of EPTL 3-4.4 to the proceeds of sale of real estate sold by a court-appointed conservator pursuant to a court order.
The decedent, Jane H. Barnwell, died on April 12, 1976, leaving a last will and testament dated November 17, 1971, which was probated in this court on May 21, 1976, at which time letters testamentary were issued to the petitioner, William E. O’Connor. Prior to her death, the decedent was the owner of real property commonly referred to as 1242 Colvin *857 Avenue in the Village of Kenmore, Town of Tonawanda, County of Erie and State of New York. During the latter part of 1975, a proceeding to have petitioner, William E. O’Connor, appointed conservator of the property of the decedent was instituted in the Erie County Court, pursuant to which proceeding said petitioner was appointed on December 19, 1975 with a direction to sell the real property above described. Pursuant to such judgment, the petitioner, as conservator, proceeded to sell the real property in question, and presently holds in his possession the sum of $22,246.80, which represents the net proceeds of the sale of said real property.
Paragraph second of decedent’s will provides as follows: "second: I give, devise and bequeath to my niece, Margaret riley, real property owned by me in which I reside and which is located at 1242 Colvin Avenue, Kenmore, New York, together with all the household furniture and personal effects.” The balance of the estate is disposed of by the residuary clause of the will.
The proceeding to appoint a conservator in County Court was brought under section 77.19 of the New York Mental Hygiene Law, which provides as follows: "a conservator shall have control, charge, and management of the estate, real and personal, of the conservatee, and shall have all powers and duties granted to or imposed upon a committee of the property of an incompetent appointed pursuant to article seventy-eight of this chapter, subject to the jurisdiction of the court and in accordance with the procedure therein specified, and shall have such additional powers as the court by order may specify. However, the court may add, withdraw, restrict, or limit any of the aforesaid powers during the term of the conservatorship.” In requesting a direction of the court to sell the real estate of a conservatee, it thus appears that the procedures outlined under section 78.15 of article 78 of the Mental Hygiene Law, which specifically provides for the disposition of real property by a committee pursuant to section 1711 of article 17 of the Real Property Actions and Proceedings Law, must be followed. This section antedates the statute relating to conservatorship proceedings and applies specifically to dispositions of real property by committees of adjudicated incompetents. At section 1755 of said article 17 of Real Property Actions and Proceedings Law, provision is made for the preservation of the nature of the interest sold so as to be disposed of in conformity with EPTL 3-4.4, which provides as *858 follows: "In the case of the sale or other transfer by a committee, during the lifetime of its incompetent, of any property which such incompetent had previously disposed of specifically by will when he was competent, and if no order had been entered setting aside the adjudication of incompetency at the time of such incompetent’s death, the beneficiary of such specific disposition is entitled to receive the money or other property to which the proceeds from such sale or transfer may be traced.”
Specifically, therefore, the issue is whether the provisions of EPTL 3-4.4 should be extended to apply to the proceeds of real property sold by a conservator pursuant to section 77.19 of the Mental Hygiene Law. Since the enactment in 1972 of article 77 of the Mental Hygiene Law (L 1972, ch 251) pertaining to the appointment of conservators, many situations have arisen wherein the duties, liabilities and obligations of the conservator have had to be defined so as to conform to the duties, liabilities and obligations of the committee of an adjudicated incompetent. This certainly seems to be the intention spelled out in section 77.19 of the New York Mental Hygiene Law. It has become necessary, however, at least in some isolated situations, to equate the rights of a conservator with those of a committee, such as extending the authority of a conservator to qualify for letters of administration in the same manner as the committee of an adjudicated incompetent. The various sections of the Mental Hygiene Law seem to bear out a legislative attempt to put conservators on an equal footing with committees of adjudicated incompetents. It would seem appropriate, however, that the New York State Legislature further clarify the conservator statutes so as to resolve any question as to whether the consequences of the acts of a conservator should not be regarded in the same light as the consequences of the acts of the committee of an adjudicated incompetent. (Mental Hygiene Law, § 78.02.)
In the issue now before this court, a review of the conservatorship proceedings in Erie County Court becomes necessary to the proper disposition of said issue. In that proceeding, all apparent distributees of the conservatee were cited, and a guardian ad litem was appointed to protect her interests. The appearance of the conservatee herself was dispensed with pursuant to the affidavit of her attending physician, who indicated that her condition was such that "It is inadvisable for her to attend a hearing in Court to determine her need for *859 a Conservator.” It was represented to the County Court Judge that the proposed conservatee was unable to manage her property by reason of advanced age, illness and infirmity; that she is "suffering from an advanced case of arteriosclerosis, as a result of which she is often incoherent and experiences delusions”. This was confirmed by her attending physician, who also stated: "I believe Jane H. Barnwell is incapable of handling her own affairs, and I am of the opinion that this disease will remain chronic and not improve.” It is to be noted that the petitioner, during the lifetime of the deceased, had obtained from the decedent, prior to her incapacitation, a power of attorney which under normal circumstances would have given him sufficient authority to pursue the sale of the real estate without a court order. Being mindful, however, of the infirmities subsequently developed by the decedent, Jane H. Barnwell, the petitioner chose not to act pursuant to such power of attorney. Knowing full well that the validity of the power of attorney may be questioned by reason of the subsequent mental and physical failures of the said Jane H. Barn-well, he very wisely decided to seek court intervention by applying as he did for the appointment of a conservator. The sale of the property in question pursuant to the power of attorney then in petitioner’s possession may well have produced a different result. However, that issue is not before this court at this time.
The sale of the property was a court-directed sale not involving the direct consent, approval or acquiescence of the conservatee, Jane Barnwell. Her mental and physical condition and her apparent inability to participate in the sale at that time could not be given any greater significance than that of an adjudicated incompetent. The crux of the issue at hand is that the sale was directed pursuant to the judgment of the Judge of the County Court based on the evidence before her, and was not in any way attributable to the judgment of the conservatee individually. The sale was mandated on December 19, 1975, and was consummated on the 13th day of February, 1976. The conservatee died on April 12, 1976. It appears from the proceedings before this court, and the testimony taken herein, that testatrix died without any noted change in her mental or physical condition from that which was noted at the time of the appointment of the conservator on December 12, 1975. Her ability to have changed her will between the date of the judgment appointing the conservator *860 and the date of her death could not have varied in the opinion of this court and based upon the evidence before it, to any greater degree than the ability one looks for with reference to a will drawn by a person judicially declared incompetent during the period of such incompetency prior to death. The conservator was still acting at the time of the death of the deceased.
Under all the circumstances, it is only just that the reasoning behind EPTL 3-4.4 be applied to the instant proceeding. The obvious intentions of a testatrix should not be allowed to be frustrated by court intervention.
It is therefore the decision of this court that the proceeds of sale of the real property referred to as 1242 Colvin Avenue, Tonawanda, New York, be paid to Margaret Riley, the specific devisee referred to in paragraph second of the last will and testament of the deceased.