Bernard L. Reagan, S.
Merchants National Bank & Trust Company, as executor of the last will and testament of Minnie A. Clark, deceased, petitioned this court requesting a determination as to the validity, construction, and effect of the disposition of property contained in clause "C” of article First of the will of Minnie A. Clark which was dated October 26, 1970, and admitted to probate by this court on January 23, 1975.
Clause "C” of article First of the decedent’s will provides as follows: "I give, devise and bequeath all real property, stables, barns and other facilities necessary or incidental to the breeding, raising, boarding and training of horses, together with the improvements thereon and the appurtenances thereto, and all horses and equipment necessary or incidental to the breeding, raising, boarding and training of horses, which I may own at the time of my death and which are situate in Southern Pines, North Carolina and elsewhere and everywhere, and all my right, title and interest in and to any policies of insurance relating to such property to HARRY DUANE CLARK, if he survives me.”
Harry Duane Clark survived the testatrix. At the time of her death, Minnie A. Clark was residing at the James Square Nursing Home, Syracuse, New York.
The petitioner, Merchants National Bank & Trust Company, had been appointed conservator of her property by order of the Supreme Court, Onondaga County, on April 24, 1973. Prior to the death of Minnie A. Clark, the petitioner as conservator of her property brought a special proceeding in *927 Supreme Court of Onondaga County for authority, inter alia, to sell Mrs. Clark’s horse van, trailer and six of her horses. Authority to sell was granted by order of the Supreme Court dated January 18, 1974. Thereafter, the petitioner sold said assets netting a total of $9,850.
The petitioner has raised the following question for this court to decide: Does EPTL 3-4.4 apply to the sale of personal property by a conservator?
The parties stipulated among other facts the following:
(1) That the testatrix’ estate was solvent at the time of her death.
(2) That the sale of the property devised under article First (C) of the testatrix’ will was not for the purpose of paying debts, funeral expenses or costs of administration.
(3) That the conservatee did not request the sale.
(4) That the conservatee did not acquiesce in or ratify the sale.
This court reviewed the conservatorship proceedings that were brought in the Supreme Court of Onondaga County and the guardian ad litem’s report. At the time of the appointment of the conservator for the property of Minnie A. Clark, her doctor’s affidavit contained in the conservatorship file indicates that she was suffering from a personality disorder complicated by cerebral arteriosclerosis which resulted in her inability to manage her own affairs on a substantial basis. The petition seeking the appointment of a conservator states that "she has suffered substantial impairment of her ability to care for her property. Specifically, by reason of cerebral arteriosclerosis and other effects of advanced age, she suffers occasional loss of memory and occasional inability to concentrate for any extended period of time with the result that from time to time she cannot cope with the management of her affairs.”
There is no evidence to suggest that the proceeds from the sale of the property in question have been expended for the benefit of Mrs. Clark during her lifetime so as to possibly bring the case within the rule which was adopted in Matter of Gomez (160 Misc 503). On the contrary, there appear to be ample assets in the estate. An examination of documents in the conservatorship proceeding clearly indicates that there was sufficient income to maintain the decedent during her lifetime without the sale of the horses and trailer. The petition for the sale of this property indicated that the then *928 present cost of maintaining the six saddle horses was approximately $1,200 per month, and that they were insured at an annual premium of $654. It was the opinion of the conservator that the horses should have been disposed of so as to relieve Mrs. Clark’s assets from the burden of paying for their care. It was the conservator’s opinion that the continuing value of the horses was subject to considerable hazard, and it was believed to be advisable to reduce that value to cash which could be invested to produce income.
The attending physician reported within a short time prior to the petition for the sale that Mrs. Clark’s ability to care for herself "has been impaired to the extent that she requires assistance in bathing, dressing, and ambulating. Without assistance, she displays marked confusion and disorientation resulting in distress.”
A discussion of the present state of the law as it pertains to conservators might be helpful in understanding the court’s decision.
Early New York law followed the common law and provided that an ademption was dependent upon the intention of the testator. That is no longer the common law of New York (Matter of Wright, 7 NY2d 365, 368-369; Third Report of Temporary State Comm on Modernization, Revision and Simplification of Law of Estates [NY Legis Doc, 1964, No. 19, p 350]). The present common-law rule in New York holds that the absence of that asset from the distributive estate in and of itself adeems that legacy. (Matter of Brann, 219 NY 263, 268.)
EPTL 3-4.4, which is the successor of section 36 of the Decedent Estate Law enacted in 1964 abolished the application of the ademption rule for all property previously disposed of by will which a committee sold or transferred during the testatrix’ life and provided for the tracing and distribution of such proceeds.
EPTL 3-4.4 specifically applies to committees which are appointed pursuant to article 78 of the Mental Hygiene Law and makes no mention of its application to conservators who are appointed pursuant to article 77 of the Mental Hygiene Law.
If property sold or disposed of by a conservator does not come under EPTL 3-4.4, then the common-law rule in New York would prevail under the theory that if property which has been specifically given in the will is not present in the testator’s estate at death, an ademption occurs. Once it has *929 been ascertained that the precise thing given under the terms of the will is not available for distribution, no further inquiry is necessary. Neither the reason for the change nor the testator’s intention is of any significance. (Matter of Brann, supra.)
In Matter of Ireland (257 NY 155) the court held that in the absence of statutory authority, there is no power in the courts to change a specific into a general legacy or to turn over the balance of the proceeds derived from the sale of specific property to the legatee in place of the particular things intended to be given.
Section 36 of the Decedent Estate Law abrogated the holding in the Matter of Ireland (supra), and provided the uniform rule permitting no ademption for the sale by a committee of property whether real or personal. This statute is now EPTL 3-4.4 and refers only to committees of incompetents and makes no reference to conservators.
Article 77 of the Mental Hygiene Law governs conservators. Section 77.01 of the Mental Hygiene Law speaks to the appointment of a conservator of the property of "a resident who has not been judically declared incompetent and who by reason of advanced age, illness, infirmity, mental weakness, intemperance, addiction to drugs, or other cause, has suffered substantial impairment of his ability to care for his property”.
Section 78.01 of the Mental Hygiene Law describes the person for whom a committee should be appointed instead of a conservator. The Legislature quite clearly manifested a preference for conservators as indicated in section 78.02 of the Mental Hygiene Law.
Articles 77 and 78 of the Mental Hygiene Law were adopted in 1972 and were the result of a recognition that people may need assistance in the management of their affairs due to advanced age, but would not be considered "incompetent” as the term is generally understood.
EPTL 3-4.4 was enacted in 1968 prior to the amendment to the Mental Hygiene Law which added article 77 concerning conservators. When EPTL 3-4.4 was adopted, conservators were unknown under New York practice.
Section 77.19 of the Mental Hygiene Law provides that subject to the limitations and directions, if any, imposed by the court appointing the conservator "a conservator shall have control, charge, and management of the estate, real and *930 personal, of the conservatee * * * a committee of the property of an incompetent appointed pursuant to article seventy-eight of the chapter”. Thus EPTL 3-4.4 is made applicable to a conservator by the incorporation by reference of the limited powers of a committee of an incompetent to dispose of property subject to prior testamentary bequest. The same powers, no more nor less, are granted to a conservator pursuant to the express wording of section 77.19 of the Mental Hygiene Law.
The sale of Minnie A. Clark’s horses and chattels was directed pursuant to an order of the Judge of the Supreme Court of Onondaga County. The sale was ordered by the court and was not in any way ratified or requested by the conservatee. The record indicates that conservatee exhibited marked confusion and disorientation and was in no mental condition to make judgment. Her guardian ad litem appeared in her behalf and agreed to the sale. The fact that a court order was obtained only strengthens the specific devisee’s case in following the funds of the sale.
In Matter of Barnwell (88 Misc 2d 856, 860) the court held that: "Under all the circumstances, it is only just that the reasoning behind EPTL 3-4.4 be applied to the instant proceeding. The obvious intention of a testatrix should not be allowed to be frustrated by court intervention.”
Although the Barnwell case was concerned with real estate sold by a conservator pursuant to court order, and the case at bar deals with property sold pursuant to court order, I can see no distinction. The same reasoning should apply in both situations.
To allow the sale of the various articles of personal property to work an ademption would be to give the court powers to alter and amend the will of the testatrix and thereby defeat her testamentary intent. It is the decision of the court that the proceeds of the personal property devised under clause "C” of article First of the last will and testament of Minnie A. Clark in the amount of $9,850 be paid to Harry Duane Clark.