OPINION OF THE COURT
P. Raymond Sirignano, J.
In this proceeding to declare Mrs. Rosemary Baltz Seronde incompetent, the individual copetitioner and the guardian ad litem have moved to convert the proceeding into one for the appointment of a conservator. The motion presents several interesting and important questions pertaining to jurisdiction and, if the application for conversion is granted, the propriety of appointing the corporate petitioner as one of the conservators.
FACTUAL BACKGROUND
Mrs. Seronde, the alleged incompetent person, is a nonresident of this State, having resided with her husband in the States of Maine and Florida for the last 20 years. Mrs. Seronde is 76 years of age and her husband is 96. He suffers from a variety of disorders including virtual inability to read due to failing eyesight. He is not physically able to care for his wife, Mrs. Seronde.
She in turn apparently enjoys good physical health but for some period of time has been laboring under a disability affecting her mind. The two psychiatric reports, the neurological report, the medical testimony of the psychiatrist and the individual copetitioner, a physician licensed in this State, establish that Mrs. Seronde is suffering from a form of senile dementia, which is chronic and irreversible. The medical explanation for this condition has been established through the use of brain scans which reveal an atrophy. Consequently, as the second psychiatric report concludes, Mrs. Seronde suffers from a "mental illness and is unable adequately to conduct her personal or business affairs”. The testimony also *487 reveals, however, that at times the alleged incompetent has lucid moments, can carry on a conversation and recognizes close relatives. Additionally, all parties, the guardian ad litem and the physicians agree that Mrs. Seronde should continue to reside at home where a "round-the-clock staff is available to watch over and care for her.”
THE JURISDICTIONAL NEXUS
Apart from an interest as tenant in common in the residence in Florida, virtually all of the alleged incompetent’s assets are located in this State. Mrs. Seronde maintains several bank accounts in this State, some with the corporate petitioner. Additionally, the corporate petitioner administers a nondiscretionary investment account on her behalf. This account consists primarily of securities (stocks and bonds). With the exception of United States Treasury Bonds and bonds out for redemption, all securities are maintained by the corporate petitioner at its offices in the City of White Plains in Westchester County. Furthermore, the alleged incompetent person is the recipient of income as the life beneficiary of four trusts, which are administered by the corporate petitioner as trustee or cotrustee. All assets of said trusts, which consist of securities, are maintained in this State.
JURISDICTION
The petitioners are the Bankers Trust Company and the alleged incompetent’s stepson, Dr. Joseph Seronde, Jr. There are no children of the union between Mrs. Seronde and her husband. However, he had two children by a prior marriage who were not adopted by the alleged incompetent. They are both nonresidents of this State, Dr. Seronde being a resident of the State of Massachusetts.
The corporate petitioner presents two arguments concerning the necessity for a declaration of incompetency: (1) such a proceeding is necessary to obtain jurisdiction; and (2) the alleged incompetent is, in fact, incompetent. The guardian ad litem contends that this court has jurisdiction in rem, which is all it could obtain under the circumstances and, further, that his ward is not incompetent but is merely suffering from an impairment of her ability to care for her property.
Section 78.01 of the Mental Hygiene Law gives the Supreme Court jurisdiction over the person and property of an incompe *488 tent person. The statute constitutes codification of the common-law rule in this State that jurisdiction is inherent (Sporza v German Sav. Bank in City of N. Y., 192 NY 8). The venue provision, insofar as relevant here, vests venue in the Supreme Court within the judicial district where the incompetent resides or, if the incompetent is a nonresident, where some of the incompetent’s property is located (Matter of Roe, 24 NY2d 52; Mental Hygiene Law, § 78.03, subd [b]).
In Matter of Paddock (204 NY 640) the State Reporter’s notes reveal that the constitutionality of the progenitor incompetency provisions were presented to the Court of Appeals regarding this State’s exercise of jurisdiction over a nonresident incompetent’s property located here. The Court of Appeals sustained jurisdiction.
Thereafter, the same question was presented to Mr. Justice Shientag in Matter of Ryan (180 Misc 478). In reaching the same conclusion the court notes (pp 481-482):
"In this State there has been definite judicial recognition of the court’s power and jurisdiction to appoint a committee of property in the State belonging to a nonresident incompetent who is personally outside the State. (Matter of Tracy, 1 Paige 580; Matter of Mason, 1 Barb. 436; Matter of Petit, 2 Paige 174; Matter of Perkins, 2 Johns. Ch. 124; Matter of Ganse, 9 Paige 416; Sporza v German Savings Bank, 192 N.Y. 8, 14-17; Matter of Paddock, 204 N.Y. 640.)
’Matter of Paddock (supra) would seem to be controlling authority on the precise question involved in the instant case. The points here urged were all briefed before the Court of Appeals. By its answers (without opinion) to certified questions, the Court of Appeals squarely upheld the jurisdiction to appoint a committee of property located in this State of a nonresident incompetent not personally served with notice within the State * * * The result reached in Matter of Paddock finds support in other jurisdictions. (Citing authorities.)”
The court, in Matter of Ryan (supra), went on to note that due process had been complied with; notice had been given the next of kin; no proceeding in any other jurisdiction was pending and a guardian was appointed to protect the interests of the alleged incompetent. It therefore denied a motion to vacate the finding of incompetency, which order was affirmed on appeal (Matter of Ryan, 267 App Div 861, app dsmd 292 NY 715; see, also, Matter of Farrell, 97 Misc 2d 18).
Section 77.01 of the Mental Hygiene Law confers jurisdic *489 tion in the Supreme Court for appointment of a conservator for a resident or, for a nonresident for whom a conservator has been appointed in another State.* §Section 77.05 of the statute relating to venue parallels article 78 and provides that venue lies in the Supreme Court within the judicial district where some of the property of the nonresident proposed conservatee is located.
Other relevant sections of the same statute mandate that the court first consider the propriety and availability of a conservatorship proceeding (Mental Hygiene Law, §§ 77.04, 78.02). Moreover, unlike the incompetency provisions wherein a committee of the person cannot be appointed over a nonresident (Matter of Ryan, 180 Misc 478, 480, supra), the conservatorship provisions authorize the court to grant the conservator such additional powers as are necessary to perform his duty (Mental Hygiene Law, § 77.19) and to make an order to provide for the "personal well-being of the conservatee” and for "the maintenance and support of persons legally dependent upon the conservatee” (Mental Hygiene Law, § 77.21).
At bar, the petitioners request the appointment of a joint committee of the property and that the individual petitioner be appointed committee of the person. In this court’s opinion, jurisdiction in this proceeding involving a nonresident is in rem only. Thus, the second prayer for relief must be denied without prejudice to any in futuro or ancillary application. Furthermore, the statutory jurisdictional provisions of articles 77 and 78 of the Mental Hygiene Law, which are directed to cure similar evils — that is, to protect the person and property of persons under mental disability, are to be construed liberally to effectuate their beneficient purposes. The jurisdictional and venue provisions of article 77 of the Mental Hygiene Law, which parallel the incompetency sections, must be harmonized *490 to avoid ambiguity and absurdity (McKinney’s Cons Laws of NY, Book 1, Statutes, § 145). Consequently, the court concludes that it would have jurisdiction in rem over the property herein had the matter been initially commenced in the form of a conservatorship proceeding. Accordingly, such jurisdiction continues and subsists if this matter is converted into a conservatorship proceeding.
CONVERSION
The question of conversion has been amply briefed by the guardian ad litem and the court shall quote therefrom:
"Perhaps the most appropriate place to start is the purpose behind the conservatorship legislation which was enacted in 1972 (L. 1972, ch. 251). This matter was studied in depth by the Law Revision Commission in 1966 (1966 Law Revision Commission Report, 'Relating to Conservators of the Property of Persons Unable to Manage Their Affairs’ p. 261 et seq). In distinguishing between New York’s (then) practice and the scope of its recommendation the Commission stated (p. 340):
" 'The appointment of a guardian (or committee) to care for the property of an individual, in New York and elsewhere, rests upon a finding of mental incompetency. This may or may not amount to insanity depending upon the facts of the particular case and the requirements of the controlling statute. But in any case, there is implicit in such appointment a lack of mental capacity which impugns the status of the individual, and he is deemed unable to manage his affairs. A person of sound mind may, due to ill health, physical indisposition or old age, or other cause, likewise be unable to care for his property, and yet he is afforded no similar protection in the absence of a conservatorship law. The need for assistance to persons weakened but still of sound mind is sufficiently great to warrant the adoption in this state of a conservator-ship law.’
"Upon enactment of the legislation in 1972, the memorandum in support thereof noted (McKinney's 1972 Session Laws of N.Y. p. 3290):
" 'This article incorporates the provisions of the bill proposed by the Law Revision Commission for the appointment of conservators. The provisions of the conservator bill were drafted after very extended study by the Law Revision Com *491 mission and after their review of the provisions of conservatorship laws which have been enacted in over twenty states.
" 'The need for a procedure to preserve the property of persons who are unable to manage their own affairs either because of debilitating factors which create a condition falling short of incompetency or, if actual incompetency exists, where there is a disinclination to initiate a proceeding to declare such incompetency because of the stigma attached thereto has been repeatedly emphasized by persons who have studied the problem. The special committee to study commitment procedures established by the Association of the Bar of the City of New York, commented favorably on the need for such a conservator procedure (Mental Illness and Due Process, Cornell University Press, 1962).
" 'The conservatorship procedure provides a flexible means for protecting the property of persons with serious debility and gives the court the power to set limits upon the authority of the conservator and to insure that the conservatee has an adequate allowance for his personal needs. The civil rights of the conservatee are not affected. The title to the conservatee’s property remains in him and the conservatee has the power to dispose of his property by will if he possesses the requisite testament capacity. Adequate procedures are incorporated to protect the constitutional rights of the person who is the subject of the proceeding.’
"In sum, the 1972 revision of the then extant Mental Health Law amounted to a complete overhaul (1972 Legislative Annual 176-77, 345-46).
"In Matter of Emerson (Schein) (73 Misc. 2d 322 [Sup. Ct. N.Y.Cty. 1973]) the Court sua sponte converted an incompetency proceeding into a conservatorship proceeding. In so doing, the Court set forth its rationale as follows:
" 'For many years, students of the needs of our senior citizens have urged the availability of procedures that would provide sufficient care and protection for the elderly without infringing their liberty and daily pattern more than necessary.’ (at p. 323)
* * *
" 'Commenting upon the New York procedures for the appointment of committees and other arrangements in the law for the limited care of the property of .elderly patients in institutions, the Special Committee of the Bar Association *492 commented: "Provision should be made for managing the property of some persons whose mental illness is not serious enough to require hospitalization but who are unable to deal with the financial problems they must regularly face. In some cases, persons who cannot handle their affairs but who could be treated and cared for without entering a mental hospital are sent to an institution in order to simplify the procedure for appointment of a committee. For these persons, simple and informal procedures for the appointment of a conservator of their property might mean a chance for useful treatment in the community rather than admission to a mental institution.” ’ (Mental Illness and Due Process, p. 41).
"The committee recommended that if a limited trial of the conservatorship idea was successful, 'a conservator should be authorized in the case of persons who are unable to care for their property and business interests whether or not they are hospitalized.’ (Mental Illness and Due Process, p. 42.)
"Taking up this suggestion, the Law Revision Commission of the State of New York thoroughly studied the proposal (N.Y. Legis. Doc., 1966, No. 65 (G), pp. 261-351) and recommended the enactment of a statute. It was not then passed.
"When the recodification of the Mental Hygiene Law was enacted, however, in 1972 (L. 1972, ch. 251), article 77 of the new State Mental Health Code adopted the Law Revision Commission and Bar Association Committee conservatorship proposal practically unchanged, and, indeed, extended it even to mentally retarded persons.
" 'It should be noted that this development in New York reflected the general movement nationally to provide for the protective needs of the elderly and the aged through use of a conservator.’ (at p. 325)
" 'Time enough to go beyond a conservator in the future should this at any time hereafter be found imperative to respondent’s welfare. Unless and until imperative, the court need not impugn the status of respondent or the soundness of her mind.’ (at p. 326)
"Similarly, in Matter of Finkle v Casler (73 Misc 2d 326 [Sup. Ct. N.Y. Cty. 1973]) the Court held that the statute evinced a preference for conservatorship over incompetency. Therefore, on its own motion, and despite that fact, the proceeding had been commenced prior to enactment of the statute on conservatorships, the Court converted the proceeding into a conservatorship.
*493 "Both decisions are significant since they reveal a judicial attitude for preferring conservatorship declarations rather than incompetency adjudications. However, they are even more important in that respect for their holdings were subsequently codified in 1974 when the State Legislature substantially revised the Mental Hygiene Law. Insofar as is pertinent here the Legislature added new sections 77.04 and 78.02 to the Mental Hygiene Law and amended section 78.03 thereof (L. 1974, ch. 297). The newly added sections read as follows:
" '§ 77.04 Alternative appointment of conservator. The Court may treat a petition for declaration of incompetency and appointment of committee under article seventy-eight of this chapter as a petition for the appointment of a conservator.’
" '§ 78.02 Preference for conservators. Prior to the appointment of a committee under this article it shall be the duty of the court to consider whether the interests sought to be protected could best be served by the appointment of a conservator. The court shall not make a finding that a person is incompetent or is a patient who is unable adequately to conduct his personal or business affairs unless the court first determines that it would not be in such person’s best interests to treat him as suffering substantial impairment under article seventy-seven of this chapter.’
"The amendment to section 78.03 of the Mental Hygiene Law added certain language to subdivision (c) thereof. The cited statute now requires that in the petition for a declaration of incompetency the petition 'shall state facts showing * * * that a conservatorship under article seventy-seven of this chapter would be inappropriate’.
"The Legislative memorandum submitted in support of the 1974 changes stated (McKinney’s 1974 Session Laws of N.Y., p 1984):
" 'Purpose of the bill:
" 'To establish a statutory preference for the appointment of a conservator over the appointment of a committee for persons whose ability to care for their property is impaired.
" 'Summary of provisions of the bill:
" 'The bill would:
"' — Add a new section to the Mental Hygiene Law (to be section 78.02) to provide that before a court may find that the person is incompetent and appoint a committee, the court *494 shall first determine that it would not be in the best interests of a person to appoint a conservator to manage his affairs;
"' — Amend section 78.03 of such law to require that a petitioner in a proceeding to appoint a committee set forth facts showing that the appointment of a conservator would be inappropriate; and
"' — Add another new section to such law (to be section 77.04) providing that a court may treat a petition for declaration of incompetency and appointment of committee as a petition for the appointment of a conservator.
" 'Statement in support of the bill:
" 'The Mental Hygiene Law provides two methods of protecting a person whose ability to manage his affairs is impaired by mental or physical illness, infirmities brought on by advanced age, intemperance, drug addiction, or other causes— the conservatorship and the committee. Of these, the conservatorship is less restrictive of the freedom of the individual, and does not carry the stigma of a judicial finding of incompetency. A declaration of incompetency and an appointment of a committee strips a person of control over both his person and his property, and is more subject to abuse.
" 'The bill would establish a statutory preference for the appointment of a conservator, thereby adopting the concept of "the least restrictive alternative”. This approach has been adopted by some courts in the state, but should be used in all cases.
" 'The bill would implement a recommendation set forth in the 1974 Annual Message of the Governor.’
"In Matter of Cantor (80 Misc. 2d 555 [Sur. Ct. Kings Cty. 1975]) the Court concluded that the purpose behind a committee and conservatorship dovetailed and, therefore, the conservator could obtain letters of administration on behalf of the distributee-conservatee, although the relevant statute referred only to committees. The court noted (p. 556):
" 'Article 77 of the Mental Hygiene Law enacted in 1972, (L. 1972, ch. 251) has many beneficien! purposes. The most important is to provide property management for those persons who fall short of qualifying for committeeships because they may not be said to be legally insane, but who are unable to manage their own affairs because of other debilitating factors (Matter of Schnelle, 74 Misc. 2d 226). Another is to overcome the reluctance of relative or other interested persons to apply for *495 the appointment of a committee upon a judicial finding of incompetence. The appointment of a conservator to manage a person’s property carries with it no stigma. In most cases, as here, it is purposed to establish a fiduciary to care for the property of a person who, by reason of advancing age, cannot perform this function himself.’
* * *
" 'However, section 77.19 of the Mental Hygiene Law clearly expresses the legislative purpose that a conservator shall have all of the powers and duties granted to or imposed upon a committee, and in several other respects is modeled on the committeeship statute (e.g. Mental Hygiene Law, § 77.13).
" 'Additionally, section 78.02 of the Mental Hygiene Law expresses preference for conservators by stating that prior to the appointment of a committee, the court shall have the duty to consider whether the interests sought to be protected could best be served by the appointment of a conservator. Both sections are purposed to preserve and manage the property of a person who cannot adequately do so himself.’
"In Whiting v Marine Mid. Bank (80 Misc. 2d 871 [Sup. Ct. Chattaraugus Cty. 1975]) the Court adverted to the effect of the 1974 amendments as follows (p. 885):
" 'Acknowledging that a declaration of incompetency and an appointment of a committee strips a person of control of both his person and his property in contrast to a conservatorship, which is less restrictive of the individual and does not carry a stigma of judicial incompetency, the Legislature, by chapter 297 of the Laws of 1974, established a new statutory scheme of preference of conservatorship over committeeship.
" 'By requiring that all petitions for a committeeship contain facts showing why a conservatorship would be inappropriate (Mental Hygiene Law, § 78.03, subd. [c]); by imposing a duty on the courts to consider whether the interest of a party could not best be served by a conservator before any appointment of a committee is made (Mental Hygiene Law, § 78.02) and by permitting a court to treat petitions for a committee-ship as one for conservatorship (Mental Hygiene Law, § 77.04) a new legislative scheme was placed in our statutory law effective September 1, 1974.’
"Mention should also be made of Matter of Alden (90 Misc. 2d 278 [Sup. Ct. N.Y. Cty. 1975]) where the petition for declaration of incompetency was converted into a conservator- *496 ship proceeding upon the consent of the petitioner and the guardian.”
It is clear from the above authorities that the preference for conservatorship is an approach that should be used in all cases since "its lesser intrusion into the rights of the individual, is the preferred procedure” (Zusman & Carnahan, Mental Health, NY Law & Prac, § 17.01; see, also, 1979 Law Revision Commission Report, McKinney’s Session Law News [April 1979], pp A-132 — A-135). Furthermore, the proof herein establishes that Mrs. Seronde suffers from a substantial impairment of her ability to care for her property or to provide for herself, by reason of advanced age and mental weakness.
Under the circumstances a conservatorship is warranted (Matter of Schnelle, 74 Misc 2d 226, where the conservatee suffered from a similar ailment). Accordingly, the motion to convert the instant proceeding into a declaration for conservatorship is granted, particularly since the court is authorized to provide for the conservatee’s personal well-being.
THE PROPOSED CONSERVATORS
The court will appoint a conservator or conservators as may be required after further proceedings in this matter are completed. However, suffice it to say that the court concludes that a bank may be appointed as conservator as provided for by statute (Mental Hygiene Law, § 77.03, subd [a]), either as being within the definition of a "corporate body” (Denton v Jackson, 2 Johns Ch 320, 324; 18 CJS, Corporations, p 311) or as a statutorily recognized fiduciary (Banking Law, § 100, subd 3; § 100-a, subd 3; EPTL 1-2.7; General Business Law, § 359-m, subd [d]; see Mental Hygiene Law, § 79.05; 7A ULA, Uniform Fiduciaries Act, § 1, subd [1]; 8 ULA, Uniform Veterans’ Guardianship Act, § 5). Indeed, the propriety of such appointment has been sustained or not questioned in the overwhelming majority of cases that have been reported (Bankers Trust v Martin, 51 AD2d 411; Matter of Bailey, 46 AD2d 945; Matter of Clark, 90 Misc 2d 925; Matter of Gorman, 77 Misc 2d 564; Matter of Schnelle, supra; see 4A Bender’s Forms, Cons Laws of NY, Form 2, Mental Hygiene Law, § 77.03, pp 621-623; 2 Zusman & Carnahan, Mental Health: NY Law & Pracs, § 16.03, subd [2]). To the extent that Matter of Huffard (85 Misc 2d 399) is to the contrary, the court declines to follow it.
In summary the court finds and determines from the evi *497 dence adduced at the hearing held in connection with this proceeding that it has jurisdiction over the parties and subject matter of the proceeding and that the interests of justice require that the proceeding instituted by the petitioners as an incompetency proceeding be and it hereby is converted to one for the appointment of a conservator.
The court, upon all of the circumstances appearing in the record, will dispense with the actual physical presence of the proposed conservatee, Rosemary Baltz Seronde.
The court, upon all of the evidence adduced in this proceeding is satisfied by clear and convincing proof that Rosemary Baltz Seronde, the proposed conservatee, by reason of advanced age and mental weakness, has suffered substantial impairment of her ability to care for her property and the court does find that there is need for the appointment of a conservator of her property.
However, since several issues remain unresolved, the court will not at this time designate who will be appointed as the conservator or conservators of the proposed conservatee.
The court accordingly directs the parties, their attorneys and the guardian ad litem to appear for a conference to discuss the number of conservators needed, the question of commissions, the issue of the appointment of a successor trustee to one of the trusts and other issues, which conference will be held in Room 811 of the Westchester County Courthouse on the 24th day of May, 1979, at 9:30 a.m.
The court wishes to extend its appreciation to counsel and the guardian ad litem for their services herein.

 At bar, it appears that the alleged incompetent is domiciled in Maine and resides most of the year in Florida. The corporate petitioner contends that Maine law requires a voluntary application for conservatorship (Appeal of Hogan, 194 A 854; Me Rev Stat, tit 18, § 3701; see 39 Am Jur 2d, Guardian & Ward, § 22; but cf. Me Rev Stat, tit 18, subch 3-B), and it is clear that Florida does (Fla Stat, § 744.331). However, both jurisdictions recognize foreign conservators (Me Rev Stat, tit 18, § 1410; Fla Stat, § 744.102, subds [1], [3]; §§ 744.306, 744.307; see Matter of Cameron, 158 Fla 91). This court must assume that under the doctrine of comity its appointment will be accorded effect in those jurisdictions (Lamar v Micou, 112 US 452, reh den 114 US 218; Leflar, Amer Conflicts of Law [3d ed], § 217). In any event, the oddities of other jurisdictions’ statutory framework will not deter this court from protecting the best interests of the alleged incompetent person’s assets here, consistent with State and Federal constitutional principles.